EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>José Lugo López<br><br>Recurrido | Certiorari<br><br>2024 TSPR 83<br><br>214 DPR \_\_\_ |

Número del Caso: CC-2023-0109

Fecha: 31 de julio de 2024

Tribunal de Apelaciones:

  Panel VIII

Oficina del Procurador General:

  Hon. Fernando Figueroa Santiago
  Procurador General

  Lcda. Mabel Sotomayor Hernández
  Subprocuradora General

  Lcdo. Omar Andino Figueroa
  Subprocurador General

  Lcdo. Emmanuel Torres Rosario
  Procurador General Auxiliar

Representante legal de la parte recurrida:

  Lcda. Ana María Strubbe Ramírez

Materia: Procedimiento Criminal y Derecho Probatorio – Los foros primarios, confrontados con una solicitud para que el testimonio de una persona sea prescindido y sustituido por motivo de enfermedad o impedimento físico o mental, deberá ponderar la prueba contemporánea a la condición del otrora testigo para determinar si existe una probabilidad de que esa persona pueda comparecer a testificar en un futuro previsible.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br>Peticionario<br>v.<br>José Lugo López<br>Recurrido | CC-2023-0109 | *Certiorari* |

**El Juez Asociado señor Rivera García emitió la Opinión del Tribunal**

En San Juan, Puerto Rico, a 31 de julio de 2024.

El recurso ante nos exige la mayor sensibilidad para su resolución pues requiere necesariamente sopesar dos intereses cardinales en la tramitación de los encausamientos criminales. A saber, el derecho de un ciudadano a confrontar a quienes le acusen de la comisión de un delito y, por otro lado, el importante interés de reivindicar la dignidad de las víctimas de los repugnantes delitos contra la indemnidad sexual.

En este contexto, nos encontramos ante un proceso judicial donde la víctima es una menor de edad, quien ha encontrado severas dificultades a la hora de poder declarar contra el acusado, su propio padre. Así las cosas, debemos balancear el petitorio del Ministerio Público, para que se le exima de tener que presentar a la menor L.M.L.A. como testigo de cargo en el juicio en su fondo, con el derecho del acusado a poder confrontarla, aunque fuere bajo el sistema de circuito cerrado.

Tras ponderar el derecho aplicable, y en el deseo de proveer un remedio práctico y justiciero, **revocamos el curso de acción adoptado por los foros inferiores y devolvemos el pleito al Tribunal de Primera Instancia para la celebración de una nueva vista de necesidad.** Allí, el Ministerio Público vendría llamado a presentar prueba pertinente sobre la condición **al presente** de L.M.L.A., con el fin de sustentar su solicitud.

Conscientes de que en nuestra jurisdicción la interpretación de estas normas no había tenido el beneficio de un examen jurisprudencial, procedemos a exponer las pautas probatorias y adjudicativas que deben seguir los tribunales primarios al momento de ponderar una solicitud de declaración de no disponibilidad por motivos de enfermedad o impedimento físico o mental, de conformidad con la Regla 806(A)(4) de Evidencia, *infra*.

Consecuentemente, **resolvemos que los foros primarios, confrontados con una solicitud para que el testimonio de cierta persona sea prescindido y sustituido por motivo de enfermedad o impedimento físico o mental, deberá ponderar la <u>prueba contemporánea a la condición del otrora testigo</u> y en virtud de ella determinar si existe una <u>probabilidad de que esa persona pueda comparecer a testificar en un futuro previsible</u>.**

Descargado este ejercicio, el juzgador de instancia, armado con el beneficio que indudablemente le concede la apreciación de la prueba desfilada, y en el sano de uso discreción, deberá tomar las medidas

necesarias para atender la situación, **de haber sido probada**, lo cual pudiese conducir a una determinación de no disponibilidad o el ejercicio de otras medidas cautelares, como la posposición del proceso judicial.

Veamos a continuación los fundamentos que motivan nuestra determinación.

## I

Este recurso tiene su origen en dos *Denuncias* presentadas el 25 de enero de 2017 contra el Sr. José Lugo López (señor Lugo López o recurrido). La primera, por infracción al Art. 131 del Código Penal sobre Incesto, y la segunda, por infracción al Art. 133 (A) del Código Penal sobre Actos Lascivos, en su modalidad donde la víctima es menor de dieciséis años.

En apretada síntesis, los hechos que motivaron este encausamiento involucran un alegado patrón de actos sexuales por parte del señor Lugo López hacia su hija menor de edad, L.M.L.A. Según surge de las *Denuncias* que obran en los autos, dichos actos fueron repetidos en varias ocasiones.

Así las cosas, el Tribunal de Primera Instancia celebró la Vista Preliminar contra el recurrido los días 1 de febrero de 2018 y 14 de marzo de 2018. Consta de los autos que en dichas vistas la menor L.M.L.A. prestó su testimonio mediante el mecanismo del circuito

cerrado.[1] Además, debemos destacar que de la regrabación de dichas vistas surgen múltiples ocasiones en las cuales L.M.L.A. sufrió ataques de llanto y a consecuencia de ellos se detuvo momentáneamente su testimonio.[2]

Celebradas las vistas correspondientes, el foro primario determinó causa para juicio por ambos delitos imputados y se presentaron las correspondientes *Acusaciones*. Transcurridos varios años, **el 29 de marzo de 2022**, dio comienzo el juicio en su fondo.

No obstante, iniciado el interrogatorio de L.M.L.A., esta irrumpió en llanto y se vio imposibilitada de declarar. Posteriormente, fue acompañada al baño por la Técnica de Asistencia a Víctimas y Testigos y allí se desmayó, quedando inconsciente. Por esto, fue trasladada al Hospital San Antonio en Mayagüez y posteriormente al Hospital Metro Pavía de Cabo Rojo, en donde se le realizó una evaluación psiquiátrica.

Ocurrido esto, **el 31 de marzo de 2022**, la Fiscalía presentó una *Moción Informativa y en Solicitud de Sustitución de Testimonio* que fue el detonante para la

---

[1] La utilización del circuito cerrado fue impugnada sin éxito por la defensa del recurrido ante el Tribunal de Apelaciones. La determinación del foro intermedio constituye una final, firme y fuera del alcance de este recurso. Véase, *Pueblo v. Lugo López*, KLCE-2017-00798, KLCE-2017-00831.

[2] Dadas las múltiples ocasiones en las que esto ocurrió, remitimos al lector al expediente, donde obran las regrabaciones correspondientes. Véase, *Regrabación Vista de: 1 de febrero de 2018*, Apéndice del *Certiorari*, pág. 48; *Regrabación Vista de: 14 de marzo de 2018*, Apéndice del *Certiorari*, pág. 49.

controversia particular que hoy consideramos. Tras consultar con el facultativo que atendió a la menor en el Hospital San Antonio, este le recomendó al Ministerio Público "que no debe continuar declarando, para salvaguardar su integridad emocional y física".[3] En ese momento, la solicitud estuvo acompañada de una carta suscrita por la Sra. Marieli Dávila Pérez, Trabajadora Social del Hospital San Antonio y otra por el Dr. Jaime Viqueira Mariani, pediatra que atendió a L.M.L.A.

Por estos motivos, la Fiscalía solicitó que se sustituyera su testimonio en el juicio con aquel vertido el 1 de febrero de 2018 en la vista preliminar. Amparó su solicitud expresamente en la Regla 806 de Evidencia, *infra*, en virtud de la cual adujo que el testimonio previo fue sujeto a contrainterrogatorio de la defensa y expresó que este se encontraba grabado y disponible.[4]

Transcurridos **casi tres meses desde el evento traumático, el 21 de junio de 2022,** el Tribunal de Primera Instancia atendió la solicitud del Ministerio Público y celebró una vista de necesidad conforme a la Regla 109(A) de Evidencia, *infra*. Allí, el Ministerio Público presentó el testimonio de la Dra. Stephanie Aguilar Zapata, psiquiatra del Hospital Metropolitano en Cabo Rojo quien evaluó a L.M.L.A. para admisión el 1 de

---

[3] *Moción Informativa y en Solicitud de Sustitución de Testimonio*, Apéndice del *Certiorari*, pág. 57.
[4] *Íd.*, pág. 58.

abril de 2022.[5] Además, se presentó el testimonio del Dr. Luis Pérez Tijerina, médico generalista quien declaró que atendió a la menor el 31 de marzo de 2022 y desconocía cuándo fue dada de alta.[6] Por último, declaró el Dr. Alexander Joseph Arce González, psicólogo clínico que evaluó a la menor el 1 de abril de 2022 y expresó su opinión sobre el estado de la menor a esa fecha.[7]

Al concluir la vista, el foro primario les concedió a las partes un término para que fijaran por escrito su posición sobre la petición del Ministerio Público. En apretada síntesis, el Ministerio Público solicitó la determinación de no disponibilidad, pero argumentó que este es un caso distinguible de aquellos en los cuales un testigo resulta no disponible por el hecho de no haber comparecido al tribunal en etapa de juicio. Según adujo, el Ministerio Público

> **realizó todas las gestiones afirmativas y de buena fe para coordinar su viaje y comparecencia al Tribunal.** La menor [L.M.L.A.] víctima de delito sexual, vive en los Estados Unidos y [E]stado mediante el Programa de Asistencia a Víctimas y [T]estigos del Departamento de Justicia y en cumplimiento con la [C]arta de [D]erechos de las [V]íctimas y [T]estigos ha cumplido con su deber de ofrecer la asistencia que ella ha necesitado mientras está en nuestra jurisdicción.[8] (Negrillas suplidas).

Por su parte la defensa adujo en su *Moción en Cumplimiento de Orden* que

---

[5] *Resolución* del 5 de agosto de 2022, Apéndice del *Certiorari*, pág. 98.
[6] *Íd.*, pág. 100.
[7] *Íd.*
[8] *Moción en Cumplimiento de Orden del Ministerio Público*, Apéndice del *Certiorari*, pág. 78.

el Ministerio Público **no estableció que al presente la testigo L.[M.]L.A. presenta un impedimento mental permanente que la convierta en una testigo incapaz de declarar en el proceso judicial.** Además de no haber establecido la imposibilidad mental **en estos momentos**, el Ministerio Público tampoco ha demostrado que ha desplegado todos los esfuerzos razonable[s] para poder lograr que la testigo L.[M.]L.A. sea una testigo disponible conforme definen las Reglas de Evidencia.[9] (Negrillas suplidas).

Así las cosas, el Tribunal de Primera Instancia emitió una *Resolución* en la cual proveyó *no ha lugar* a la solicitud del Ministerio Público. Destacó, que conforme al derecho imperante debía resolver "**si el Estado logró probar con evidencia sustancial que agotó los esfuerzos razonables de buena fe para demostrar que la testigo al momento actual se encuentra no disponible para prestar testimonio bajo circuito cerrado, o si lo estará en un futuro razonable**".[10] (Negrillas en el original).

En ese sentido, concluyó que cuando L.M.L.A. declaró exitosamente en la Vista Preliminar había tenido preparación previa, la cual no surge que haya sido provista previo al juicio.[11] Tampoco se probó su diagnóstico actual ni que esta hubiese recibido tratamiento psiquiátrico y psicológico adicional.[12]

Tras no lograr que el Tribunal de Primera Instancia reconsiderara su determinación, el Estado, por conducto de la Oficina del Procurador General, recurrió en

---

[9] *Moción en Cumplimiento de Orden de la Defensa*, Apéndice del *Certiorari*, págs. 81-82.
[10] *Resolución* del 5 de agosto de 2022, Apéndice del *Certiorari*, pág. 111.
[11] *Íd.*, pág. 112.
[12] *Íd.*, pág. 113.

*Certiorari* ante el Tribunal de Apelaciones. Atendidas las posturas de las partes, el **foro intermedio expidió el auto y confirmó** la decisión recurrida.

A su entender, "el Estado no aportó evidencia actualizada alguna que permitiera resolver que, al momento, o en un futuro razonable o prudente, la indisponibilidad aducida habría de impedir la participación efectiva de la menor [L.M.L.A.] como testigo de cargo".[13] Pesó sobre el tribunal *a quo* la ausencia de preparación terapéutica a L.M.L.A. previo a su testimonio en el juicio en su fondo, razón por la cual ordenó al Ministerio Público a ofrecerle tratamiento psicológico previo a reanudar el juicio en su fondo.[14]

Insatisfecho, el Estado solicitó reconsideración sin éxito. Así las cosas, compareció ante nos mediante petición de *Certiorari* y señaló los siguientes errores:

> PRIMER ERROR: Los foros recurridos erraron al exigir el cumplimiento de requisitos que la Regla 806(A)(4) y (B)(1) de Evidencia no establecen para que una persona sea declarada como no disponible por razón de enfermedad o impedimento mental.

> SEGUNDO ERROR: Los tribunales inferiores incidieron al no declarar a la menor LMLA como testigo no disponible y admitir su testimonio anterior, de conformidad con las Reglas 806(A)(4) y (B)(1) de las Reglas de Evidencia, aun cuando El Pueblo estableció satisfactoriamente que, a raíz del episodio traumático que sufrió el 29 de marzo de 2022,

---

[13] *Resolución* del 12 de diciembre de 2022, Apéndice del *Certiorari*, pág. 189. Dado que la determinación del Tribunal de Apelaciones confirmó en sus méritos un dictamen del Tribunal de Primera Instancia, **esta, en realidad, es una *Sentencia* y no una *Resolución*.**

[14] *Íd.*, pág. 192.

esta estaba imposibilitada de declarar en el juicio por razón de enfermedad o impedimento mental, según constatado por los facultativos médicos que le brindaron tratamiento.

Atendido el recurso, el 30 de junio de 2023 expedimos el auto en reconsideración. Contando con la comparecencia de las partes, procedemos a resolver.

## II

**A.** *Derecho constitucional a la confrontación*

Una de las garantías fundamentales que asegura nuestro ordenamiento constitucional es el derecho de un acusado de confrontar o carearse con quienes le señalen como partícipe en la comisión de un acto delictivo. De este modo, nuestra Carta Magna dispone que en todos los procesos criminales el acusado disfrutará del derecho "a carearse con los testigos de cargo".[15] Igual disposición surge de la Constitución federal.[16]

Las controversias que han surgido en los ámbitos federales y estatales se circunscriben esencialmente a los tres matices que surgen de esta garantía constitucional. A saber, (1) el derecho del acusado de confrontar cara a cara los testigos adversos, (2) el derecho a contrainterrogarlos y, por último, (3) el derecho a que se excluya la prueba de referencia que el Ministerio Público intente presentar en su contra.[17]

---

[15] Const. P.R., Art. II, Sec. 11.
[16] Const. E.U., Enmd. VI.
[17] *Pueblo v. Pérez Santos*, 195 DPR 262, 270 (2016). Véase también, E. Chiesa Aponte, *Procedimiento criminal y la Constitución: Etapa adjudicativa*, 1a ed., San Juan, Ed. SITUM, 2018, págs. 62-63.

Ahora bien, es norma reiterada que el derecho a la confrontación no es una garantía absoluta e insuperable. Así, hemos resuelto que "en algunas instancias, el derecho del acusado a carearse y contrainterrogar a los testigos de cargo habrá de ceder ante la admisibilidad de cierta prueba de referencia, sin que ello implique una violación constitucional".[18] Esto requerirá, como hemos de explicar en el próximo acápite, una reconciliación del derecho a la confrontación con las disposiciones particulares que rigen los procedimientos judiciales de conformidad con las Reglas de Evidencia.

Ubicados de esta manera, debemos reconocer que la mayor parte de las controversias que han surgido bajo el derecho a la confrontación provienen, por un lado, de la posibilidad que el testimonio contra el acusado sea provisto por alguien que no se encuentra físicamente en la misma sala del tribunal. Por otro lado, existe una retahíla de casos que abordan el aspecto de la admisibilidad constitucional del testimonio de una persona que ni siquiera se encuentra presente en un tribunal y sujeto a contrainterrogatorio. Veamos.

En primer lugar, la validación de un testimonio que se provea en un lugar distinto a la sala donde se encuentra el acusado tiene amplio apoyo en la casuística federal y estatal. Nos referimos concretamente al uso de los mecanismos del circuito cerrado y la videoconferencia para recibir el testimonio de una

---

[18] *Pueblo v. Pérez Santos*, supra, pág. 270.

persona que por motivo de diversas circunstancias no puede declarar cabalmente estando en el mismo recinto que el acusado.[19]

Sabido es, que el uso del circuito cerrado ha sido reconocido en situaciones donde el testigo es un menor o una víctima de agresión sexual, aunque **sujeto al crisol de que se haya probado la necesidad de valerse de este método alterno.**[20] Aquí, la utilización del circuito cerrado constituye una determinación final y firme que no está en controversia.

Por otra parte, la doctrina recoge el escrutinio que ha de ser empleado cuando la controversia comprende una interrogante sobre la admisión de prueba de referencia contra un acusado. Necesariamente, esto nos dirige al caso normativo, *Crawford v. Washington*, 541 US 36 (2004).

Sin abundar más allá de lo necesario, sabemos que la metodología allí adoptada por el Máximo Foro federal y reiterada en nuestra jurisdicción en *Pueblo v. Guerrido López*, 179 DPR 950 (2010), **reconoce que la admisión de declaraciones constitutivas de prueba de referencia queda reñida con el ordenamiento constitucional cuando lo enunciado constituye una expresión testimonial.**

---

[19] Véanse, *Maryland v. Craig*, 497 US 836 (1990); *Pueblo v. Cruz Rosario*, 204 DPR 1040 (2020).
[20] En nuestra jurisdicción el mecanismo del circuito cerrado fue reconocido estatutariamente en la Regla 131.1 de Procedimiento Criminal, 34A LPRA Ap. I.

En lo pertinente, la normativa de *Crawford* y su progenie exige determinar, primeramente, si estamos ante una declaración testimonial. La naturaleza testimonial de una declaración proviene de si su propósito primario "era crear un sustituto extrajudicial para el testimonio que se ofrecería en corte".[21]

Cónsono con ello, si la declaración fuera testimonial, **procede examinar (1) si el testigo no está disponible y (2) si hubo ocasión previa para someterlo a un contrainterrogatorio.**[22] Satisfechos estos pasos, procedería la admisión de prueba de referencia contra un acusado **sin que esto implique una violación constitucional y sujeto, únicamente, al cumplimiento con los requisitos que emanan del ordenamiento probatorio estatal.**[23] Veamos a continuación.

**B.** *Prueba de referencia y la Regla 806 de Evidencia*

Es harto conocido que la prueba de referencia constituye una "declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado".[24] Precisamente por los peligros que entraña la admisión de una evidencia proveniente de un declarante a quien la parte contra quien se ofrece la declaración no ha

---

[21] *Pueblo v. Pérez Santos*, supra, pág. 271. Véase también, *Michigan v. Bryant*, 562 US 344 (2011).

[22] *Crawford v. Washington*, supra, pág. 68; *Pueblo v. Guerrido López*, supra, pág. 967.

[23] *Pueblo v. Pérez Santos*, supra, pág. 271.

[24] Regla 801 de Evidencia, 32 LPRA Ap. VI.

confrontado ni contrainterrogado,[25] la Regla 804 de Evidencia reconoce una prohibición general a la prueba de referencia,[26] salvo unas exclusiones o excepciones particularmente definidas.[27]

Ahora bien, la problemática relación de la prueba de referencia con el derecho constitucional a la confrontación en los casos criminales proviene directamente de la naturaleza de un testimonio que contiene dentro de sí una declaración emitida por alguien que no está presente para ser confrontado y contrainterrogado por el acusado o su defensa. Según examinamos previamente, el crisol constitucional exige que cualquier intento de admitir prueba de referencia contra un acusado, de naturaleza testimonial, precisa dos determinaciones, (1) la no disponibilidad del testigo y (2) una oportunidad previa de haberle contrainterrogado.

Cónsono con estos exigentes requisitos, nuestras Reglas de Evidencia instrumentan y delimitan las instancias en las cuales puede admitirse una declaración constitutiva de prueba de referencia por motivo de la ausencia o no disponibilidad del testigo.[28] De este modo, la Regla 806 (A), *supra*, de Evidencia reconoce

---

[25] E. Chiesa Aponte, *Reglas de Evidencia comentadas*, 1ª ed., San Juan, Ed. SITUM, 2016, pág. 282.

[26] Regla 804 de Evidencia, 32 LPRA Ap. VI. ("Salvo que de otra manera se disponga por ley, no será admisible prueba de referencia, sino de conformidad con lo dispuesto en este capítulo.")

[27] Véanse, las Reglas 802-03, 805-06 de Evidencia, 4 LPRA Ap. VI.

[28] Regla 806 de Evidencia, 32 LPRA Ap. VI.

cuatro excepciones a la regla general que excluye a la prueba de referencia. Distinto a las excepciones que surgen de la Regla 805 de Evidencia, permitidas indistintamente de si el declarante está disponible para testificar o no, las excepciones de la Regla 806 (A) de Evidencia requieren, como condición para su aplicabilidad, que el otrora testigo no se encuentre disponible para testificar.[29]

   **i.** *La Regla 806(A)(4) de Evidencia y su interpretación*

En lo aquí pertinente, la Regla 806 (A) (4) reconoce un fundamento de no disponibilidad cuando la persona testigo "**<u>al momento del juicio o vista</u>, ha fallecido o está imposibilitada de comparecer a testificar por razón de enfermedad o <u>impedimento mental o físico</u>**".[30] (Negrillas y subrayado suplidos).

Ahora bien, tenemos que reconocer que **esta iteración de la no disponibilidad no ha sido objeto de un examen detenido por parte de este Tribunal**. Con el fin de elaborar el caudal jurídico que motiva nuestra determinación, exponemos a continuación ciertos comentarios doctrinales que se han afirmado sobre la no disponibilidad por motivos de enfermedad o impedimento, bien sea físico o mental y, a su vez, recordar la normativa que ha regido en los casos clásicos de indisponibilidad por motivo de ausencia. Veamos.

---

[29] *Íd.*
[30] *Íd.*

Según nos indica el profesor Ernesto Chiesa Aponte, esta instancia se manifiesta cuando la salud del testigo "está tan deteriorada que no podrá comparecer en un futuro previsible".[31] Además, el tratadista nos advierte que si se trata de un testimonio importante "el tribunal no debe tomar livianamente la determinación de que el declarante no está disponible para testificar. Podría posponer la vista o dejar para el final su testimonio. **Hay que tener especial cautela cuando se trata de un testigo de cargo**".[32] (Negrillas suplidas). No obstante, "si es manifiesta la improbabilidad de que el testigo pueda comparecer en un futuro razonable, **debe hacerse la determinación de no disponibilidad**".[33] (Negrillas suplidas).

Añadido a lo anterior, el profesor Chiesa Aponte sugiere ciertos factores que podrían auxiliar al tribunal a la hora de considerar la determinación de no disponibilidad. Así, indica que se debe considerar "**la gravedad de la condición del declarante, la importancia de su testimonio y la probabilidad de que la condición del declarante mejore en un futuro, que le permita entonces comparecer a testificar**".[34] (Negrillas suplidas). Nuevamente, reitera la envergadura de estas decisiones cuando estamos ante un testigo de cargo cuyas

---

[31] E. Chiesa Aponte, *Reglas de Evidencia comentadas*, *op. cit.*, pág. 325.
[32] *Íd.*
[33] *Íd.*
[34] E. Chiesa Aponte, *Compendio de evidencia (En el sistema adversarial)*, 1 ed., Ciudad de México, Ed. Tirant Lo Blanch, 2021, pág. 380.

declaraciones sean de carácter testimonial.[35] Huelga aclarar, que, si existe un testimonio anterior sujeto a contrainterrogatorio, **cualquier problema de confrontación se desvanece**, aunque la defensa pudiese insistir en una posposición si estamos ante un escenario donde la recuperación sea posible.[36]

Por otro lado, el profesor Enrique Vélez Rodríguez nos recuerda que las situaciones que pueden manifestarse bajo esta causal de la Regla 806 de Evidencia son variadas y heterogéneas lo que aconseja "una adjudicación **con arreglo a los méritos de la situación particular**, incluida la de ejercer aquellas opciones que permitan la prestación del testimonio en vivo".[37] (Negrillas suplidas). En sintonía con lo aseverado por el profesor Chiesa Aponte, el profesor Vélez Rodríguez afirma que deben considerarse criterios como "la *condición*, *duración* y la *gravedad* de la enfermedad".[38] (Énfasis en el original). Ademas, y en lo extremo pertinente, este resalta la particular dificultad que presentan los casos donde el impedimento es mental, pues **la incertidumbre es aún mayor y existe la posibilidad de que el acto de testificar sea nocivo para el declarante.**[39] (Negrillas suplidas).

No obstante, advierte que la temporalidad o permanencia del impedimento debe guiar al tribunal en su

---

[35] *Íd.*

[36] *Íd.*

[37] E. Vélez Rodríguez, *La prueba de referencia y sus excepciones*, Ed. Rev., San Juan, Ed. InterJuris, 2018, pág. 265.

[38] *Íd.*

[39] *Íd.*

determinación. Para ello, sugiere que, si la enfermedad o impedimento es temporal, la suspensión o transferencia de la vista pudiese ser aconsejable.[40] En caso de que la indisponibilidad fuera mayor, pero no permanente, han de considerarse factores como el tiempo de recuperación, la importancia del testimonio y el interés en la pronta disposición del caso.[41] Importantemente, el profesor Vélez Rodríguez cita al tratadista Weinstein, quien afirma que este tipo de cuestiones deben ser objeto de examen en una vista con antelación al juicio, preferiblemente antes de seleccionar el jurado.[42] Esto, como hemos de resaltar, resulta cónsono con la práctica asentada en nuestra jurisdicción de celebrar vistas de necesidad para disponer de tales solicitudes.

> **ii.** *Jurisprudencia sobre otros supuestos de no disponibilidad*

Por otra parte, y como anticipamos, no pasamos por alto que la jurisprudencia de este Tribunal sí ha desarrollado cabalmente los contornos de una determinación de no disponibilidad cuando el fundamento proviene de la **ausencia** del testigo. De este modo, bien sea porque este se encuentra fuera de la jurisdicción, se ausente voluntariamente pese haber sido citado o sencillamente no puede ser encontrado, nuestra doctrina ha reconocido un deber del Ministerio Público, o el proponente de un testigo, de procurar la asistencia de esa persona mediante gestiones de buena fe.

---

[40] *Íd.*

[41] *Íd.*, pág. 266.

[42] *Íd.*

Esto, con el fin de disuadir la práctica indeseable de que se procure adrede la ausencia de un testigo con el fin de evitar el presunto revés que traería con sí un testimonio débil. Precisamente por ello, la propia Regla 806(A) de Evidencia hace una aclaración general a los fines de que una persona no se entenderá no disponible "si ello ha sido motivado por la gestión o conducta de quien propone la declaración con el propósito de evitar que la persona declarante comparezca o testifique".[43]

Conforme a ello, existen múltiples casos en los cuales hemos reiterado que "la determinación de indisponibilidad está sujeta a demostrar que el proponente ha efectuado un **esfuerzo razonable para lograr la presencia del testigo en el juicio**".[44] (Negrillas suplidas). Ello implica probar que se desplegó la **debida diligencia** para encontrar y citar al testigo mediante medios razonables.[45] En el contexto de un caso criminal, el requisito siempre ha sido que el Fiscal pruebe "las gestiones infructuosas realizadas" para localizar el testigo.[46]

Merece apuntalar que lo anterior surge de la doctrina constitucional esbozada por el Tribunal Supremo federal en *Barber v. Page*, 390 US 719 (1968). Allí, ese Tribunal afirmó la norma siguiente: "In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement **unless the**

---

[43] Regla 806 de Evidencia, 32 LPRA Ap. VI.
[44] *Nieves López v. Rexach Bonet*, 124 DPR 427, 434 (1989).
[45] *Íd*.
[46] *Pueblo v. Pellot Pérez*, 121 DPR 791, 797 (1988).

**prosecutorial authorities have made a good-faith effort to obtain his presence at trial".[47]** (Negrillas suplidas). Además, en años recientes el Máximo Foro federal fue más allá y recabó que la exigencia de gestiones de buena fe no exige agotar todas las avenidas posibles.[48]

   **C.** *Vista de necesidad conforme a la Regla 109 (A) de Evidencia*

   Finalmente, reiteramos que la vista de necesidad es un mecanismo que reconoce nuestro ordenamiento con el fin de que el tribunal pueda disponer de una controversia sobre la admisibilidad de una prueba, la capacidad de un testigo o la existencia de un privilegio evidenciario.[49] Dicha vista facilita el que estos asuntos puedan ser atendidos sin obstruir el flujo de un juicio en su fondo. Constituye, además, una instancia del procedimiento criminal en las cuales el jurado, de existirlo, no interviene en la determinación a tomar.[50] Recae exclusivamente en el juez o jueza la ponderación de los elementos conducentes a demostrar si cierta prueba puede o no ser admitida como evidencia.[51]

   Recordemos, que la vista de necesidad es precisamente el mecanismo que se ha validado en nuestro ordenamiento para atender situaciones donde se pretende

---

[47] *Barber v. Page*, 390 US 719, 724-25 (1968).
[48] *Hardy v. Cross*, 565 US 65, 71-72 (2011).
[49] Regla 109(A) de Evidencia, 32 LPRA Ap. VI.
[50] E. Chiesa Aponte, *Reglas de Evidencia Comentadas*, *op. cit.*, pág. 44.
[51] *Íd.*

admitir contra un acusado evidencia de otro modo constitutiva de prueba de referencia.[52]

### III

De entrada, el argumento central que nos trae el Estado sugiere que, en este caso, donde los síntomas que impiden el testimonio efectivo de la víctima son atribuibles a un percance emocional, no es necesario presentar prueba conducente a demostrar la indisponibilidad de la testigo al momento de instar la solicitud a esos efectos. No estamos de acuerdo.

Ciertamente, la Regla 806 (A)(4) de Evidencia, *supra*, expresa con claridad que **la no disponibilidad de un testigo debe establecerse con relación al momento del juicio o vista en el cual una parte de otro modo se hubiese valido de su testimonio.**

Colegimos, que para que el foro sentenciador pueda llegar a una conclusión de esa naturaleza es imprescindible que el Ministerio Público ──o el proponente del testigo en otro contexto── acredite mediante prueba fehaciente los fundamentos por los cuales la persona **no se encuentra disponible en ese momento y no lo estaría en el futuro cercano.**

---

[52] Véase, E. Chiesa Aponte, *Procedimiento criminal y la Constitución: Etapa Adjudicativa*, *op cit.*, pág. 86. ("Para emplear estos procedimientos especiales que limitan el derecho a la confrontación **es necesario que previamente el tribunal haga unas determinaciones específicas, caso a caso, sobre la necesidad de apartarse del modo usual de testificar frente al acusado.**"). (Negrillas suplidas).

En un caso como el de autos, donde se trata de un impedimento que surge del estado físico o anímico de la persona testigo, nos parece altamente probable que esto vaya a requerir la presentación de prueba pericial, aunque ciertamente esto no es óbice para que el foro primario pueda conocer de otra prueba que igualmente asista en resolver el asunto. En cualquier caso, es pues a través de esa prueba que el tribunal advendría en conocimiento sobre la posibilidad de que esa persona pueda recuperarse para comparecer a testificar.

Desde luego, nos referimos a un proceso hecho a la medida toda vez que, por necesidad, los elementos a considerar en cada caso serían distintos y sujetos a la ponderación que haría el juzgador primario. **Entre los factores que el foro primario pudiese considerar a la hora de decidir si en efecto se acreditó la no disponibilidad estarían, entre otros: (1) la gravedad de la condición, (2) la importancia del testimonio, (3) la probabilidad de recuperación, (4) el potencial de que el acto de testificar agrave la condición de la persona testigo y (5) el perjuicio que pueda ocasionar la dilación del proceso al acusado, por su derecho a un juicio rápido, o en cualquier otro caso a la parte afectada.** Así las cosas, una vez el tribunal se encuentre en posición de resolver la interrogante sobre la indisposición, le restaría esgrimir los pasos a seguir.

En esta coyuntura, reiteramos que la naturaleza *sui generis* de cada caso no admitiría una sola solución. Utilizando los contornos que aquí pautamos, el foro primario tendrá que decidir entre las alternativas que nuestro ordenamiento le reconoce para el manejo adecuado del caso.

Si estimara que el impedimento sería pasajero, es decir, que culminaría prontamente, entendemos que el juzgador no tendría que acudir al remedio extremo de la no disponibilidad, máxime en un caso donde el testigo en cuestión es uno de cargo. Ahora bien, ciertamente la situación resulta del todo distinta cuando la conclusión que se deriva de la prueba desfilada es que el otrora testigo no estaría disponible en un futuro razonable.

Es aquí donde la doctrina nos conduce a reconocer que el foro primario tendría que determinar si el mejor desenlace sería la determinación de no disponibilidad o, si cabe la posibilidad de una eventual recuperación, el uso de otras herramientas, como sería una posposición de los procedimientos, sujeto a medidas cautelares para cerciorarse de la condición del testigo. Ciertamente, en la coyuntura de un caso criminal, nuestro ordenamiento constitucional nos convida a pesar fuertemente la garantía que tiene el acusado a un juicio rápido frente a cualesquiera otras pretensiones, sin restarle importancia a estas.

Atendidos estos planteamientos, y a manera de resumen, **reiteramos que la norma que aquí pautamos sería aplicable en aquellos supuestos de no disponibilidad que surgen bajo la Regla 806(A)(4) de Evidencia**, *supra*, **en lo concerniente a los testigos no disponibles por razón de enfermedad o de impedimento físico o mental.**[53]

En consecuencia, **resolvemos que el deber del proponente, aquí el Ministerio Público, consiste en hacer una solicitud de no disponibilidad que venga acompañada con una prueba pericial o de otra naturaleza, que permita al juzgador concluir sobre la no disponibilidad en base a la condición <u>en ese momento</u> del testigo.**

Atendido esto y retornando al recurso que nos ocupa, cabe preguntarnos, ¿tuvo ante sí el Tribunal de Primera Instancia los elementos necesarios para hacer una determinación bien fundada sobre el estado de L.M.L.A. como testigo de cargo? **Entendemos que no.**

Sí sabemos que al momento de testificar ya había una determinación previa de que el testimonio de L.M.L.A. sería recibido mediante el mecanismo del circuito cerrado. Igualmente, se desprende del récord que L.M.L.A. pudo testificar exitosamente en la vista

---

[53] Nótese, que la doctrina que ha sido citada en contraposición por el recurrido guarda una estrecha relación con aquellas instancias donde la no disponibilidad surge de la incomparecencia del testigo. No obstante, nos resulta forzoso diferenciar los supuestos de enfermedad o impedimento de una mera ausencia. Se trata de unas circunstancias en las cuales el testigo no se encuentra disponible por no comparecer o incluso estar desaparecido, lo que no es el caso aquí.

preliminar, si bien con la asistencia y tratamiento de profesionales en la salud mental.

Sin embargo, pudimos apreciar que el estado emocional que sobrevino a la menor se manifestó en ocasión de esta intentar testificar al inicio del juicio en su fondo contra el señor Lugo López, el 29 de marzo de 2022. Aunque el Ministerio Público presentó su solicitud de sustitución de testimonio el 31 de marzo de 2022 (dos días después del incidente) **no es menos cierto que la vista de necesidad fue celebrada por el foro primario el 21 de junio de 2022, casi tres meses después.**

Así las cosas, el Ministerio Público compareció a la vista **utilizando el testimonio pericial del personal que atendió a L.M.L.A. <u>el mismo día que esta sufrió el percance emocional</u>**. De este modo, el foro primario quedó en la delicada posición de tener que disponer de la solicitud de no disponibilidad sin poseer a su alcance los elementos necesarios para ponderar el petitorio de la Fiscalía. Como resultado, la determinación judicial que inició este recurso fue el producto de un expediente en el que estaba ausente la valiosa información sobre el estado físico y mental —actual— de la menor.

Recordemos, que no estamos ante un caso donde la no disponibilidad de la testigo tendría unas consecuencias leves sobre la persona objeto del testimonio. En realidad, nos encontramos inmersos en un procedimiento

criminal, donde la consecuencia de una determinación errónea pudiese resultar en la convicción injustificada de una persona o, por el contrario, en la nefasta impunidad de un delito.

Situaciones como estas exigen un riguroso balance entre los intereses de la víctima y los del acusado. Lo anterior, sin faltar a los valores constitucionales que rigen nuestro ordenamiento garante de los derechos de un acusado de delito.

Consecuentemente, en el ejercicio de nuestra función revisora, colegimos que el curso de acción adoptado en este pleito debe ser corregido para evitar un fracaso a la justicia. Estamos convencidos, de que el desenlace actual fuerza al tribunal y a las partes hacia una disyuntiva **innecesariamente extrema**.

Por un lado, acceder al petitorio del Estado, bajo los lineamientos que surgen de sus argumentos, propiciaría una resbalosa tendencia a solicitar una determinación de no disponibilidad sin contar con la evidencia que demuestre que el impedimento se encuentra latente al momento de la vista o juicio en el cual de otro modo hubiese testificado la persona.

Lo anterior, en detrimento del derecho constitucional al careo que posee el acusado y que no puede ser soslayado livianamente en ausencia de cumplimiento con las garantías constitucionales. Ciertamente, bajo el crisol de la doctrina de *Crawford*,

de acreditarse adecuadamente la no disponibilidad, no habría violación constitucional toda vez que existió una oportunidad previa de contrainterrogar a la testigo.

Por otra parte, restringir a la Fiscalía sin darle la oportunidad de presentar su solicitud con la evidencia correcta pudiese tener un efecto nocivo sobre la lucha contra el delito. En una situación como esta, poseemos a nuestro haber mejores alternativas jurídicas.

Cónsono con lo resuelto anteriormente, disponemos como remedio que el Tribunal de Primera Instancia celebre nuevamente una vista de necesidad conforme a la Regla 109(A) de Evidencia, *supra*.[54] Al hacer esto, el Ministerio Público, si en su discreción desea continuar con el pedido de no disponibilidad, deberá acreditarle al foro primario las razones por las cuales la testigo L.M.L.A. no puede testificar cabalmente en el juicio en su fondo. Lo anterior, valiéndose de la **prueba pertinente al estado físico y mental ⸺actual⸺ de la testigo**. Descargada esa gestión, restaría que el foro primario haga una determinación sobre la disponibilidad de la testigo y, de ser necesario, disponga los pasos a seguir de conformidad con lo aquí pautado.

**IV**

---

[54] La orden emitida por el Tribunal de Apelaciones, a los efectos de requerir que el Ministerio Público brinde a L.M.L.A. servicios psicológicos previo a reanudar el juicio, nos parece contraria a la discreción que debe caracterizar el manejo de su caso por parte del Ministerio Público. Por ello, prescindimos de ordenar un tratamiento particular, dejando en manos de la Fiscalía la determinación sobre cómo proceder bajo el marco aquí establecido.

Por los fundamentos consignados en la *Opinión* que antecede, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y en consecuencia se devuelve el caso al Tribunal de Primera Instancia para la celebración de una nueva vista de necesidad. Allí, el Ministerio Público, si en su discreción desea continuar con el pedido de no disponibilidad de la testigo L.M.L.A., deberá acreditar dicha condición al foro primario mediante aquella prueba pertinente al estado físico y mental —actual— de la testigo. Recibida la prueba, el foro primario deberá resolver en consonancia con la aquí pautado.

Se dictará Sentencia en conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico | | |
|---|---|---|
| Peticionario | | |
| v. | CC-2023-0109 | *Certiorari* |
| José Lugo López | | |
| Recurrido | | |

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de julio de 2024.

Por los fundamentos consignados en la *Opinión* que antecede, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y en consecuencia se devuelve el caso al Tribunal de Primera Instancia para la celebración de una nueva vista de necesidad. Allí, el Ministerio Público, si en su discreción desea continuar con el pedido de no disponibilidad de la testigo L.M.L.A., deberá acreditar dicha condición al foro primario mediante aquella prueba pertinente al estado físico y mental —actual— de la testigo. Recibida la prueba, el foro primario deberá resolver en consonancia con la aquí pautado.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió una *Opinión Disidente* a la que se une el Juez Asociado señor Colón Pérez. El Juez Asociado señor Martínez Torres disiente y enuncia la expresión siguiente:

"Ante la ausencia de prejuicio, parcialidad, abuso de discreción o error manifiesto en la determinación emitida por el Tribunal de Apelaciones, considero innecesario intervenir con su dictamen. Recordemos que debemos guardar gran deferencia a las facultades discrecionales de los foros primarios y solamente intervenir cuando ello sea necesario para evitar un fracaso de la justicia. Véase, Pueblo v. Casillas, Torres, 190 DPR 398, 417 (2014); Rivera y otros v. Bco. Popular, 152 DPR 140, 155 (2000); Pueblo v. Ortega Santiago, 125 DPR 203, 212 (1990).

En el caso ante nos, la sentencia del Tribunal de Apelaciones es cónsona con la prueba desfilada en la vista de necesidad celebrada ante el foro primario, pues no se probó la concurrencia de una enfermedad o impedimento mental **en el presente o futuro razonable** que impidiera la participación de la

menor como testigo, según exige la Regla 806(A)(4) de Evidencia, 32 LPRA Ap. VI. Tal y como se desprende del expediente, los testigos utilizados por el Ministerio Público para sustentar la solicitud de que la menor fuera declarada testigo no disponible, a fin de poder utilizar el testimonio previamente vertido por esta en la vista preliminar, se centraron en el percance de salud ocurrido en marzo de 2022. Estos no aportaron prueba sobre la capacidad actual de L.M.L.A. para ser llamada como testigo de cargo de cara a la continuación del juicio en junio de 2022.

Por esta razón, considero que correspondía confirmar la determinación del Tribunal de Primera Instancia. Igual que el foro primario, estimo que el Ministerio Público no cumplió con el peso de la prueba para establecer que, por razón de impedimento mental o físico presentes al día de hoy, la menor no está disponible para participar como testigo en el juicio que se ventila en contra del recurrido. De conformidad con la Ley para Establecer Carta de Derechos de las Víctimas y Testigos de Delitos, Ley Núm. 22 del 22 de abril de 1988, 25 LPRA sec. 973 *et seq.*, el Ministerio Público podría asistir a L.M.L.A. a obtener el tratamiento psicológico que, de forma análoga a lo que ocurrió en la vista preliminar, le permita testificar nuevamente sin que ello represente un percance a su salud.

En fin, soy del criterio de que la orden trazada por el foro apelativo intermedio garantiza el debido proceso de ley a cada parte involucrada. Es decir, salvaguarda el bienestar emocional de la menor, así como el derecho de todo acusado a confrontar a testigos adversos. Por eso, no me parece que este sea el caso idóneo para pautar los criterios que una mayoría pretende adoptar por la fuerza. Opino que es inmeritorio inmiscuirnos en el curso de acción adoptado, mucho menos para brindarle un segundo turno al bate al Ministerio Público para que rectifique sus acciones y produzca la evidencia que no fue capaz de presentar en el pasado. Por los fundamentos expuestos, disiento respetuosamente."

Javier O. Sepúlveda Rodriguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Peticionario

        v.                CC-2023-0109

José Lugo López

     Recurrido

La Jueza Presidenta ORONOZ RODRÍGUEZ emitió una Opinión disidente a la cual se unió el Juez Asociado señor COLÓN PÉREZ

En San Juan, Puerto Rico, a 31 de julio de 2024.

Hoy, en un acto que describe como un balance de intereses adecuado, una mayoría de este Tribunal permite que la menor L.M.L.A. atraviese, nuevamente, los obstáculos incontables que ya ha enfrentado al estar sujeta a un procedimiento judicial que ha resultado ser en extremo revictimizante. Esto, a pesar de que de la prueba vertida en la vista de necesidad ya celebrada surge con meridiana claridad que ella no está disponible para testificar al amparo de la Regla 806(A)(4) de las Reglas de Evidencia, *infra.*

Mis compañeros y compañera de estrado, bajo el pretexto de tratar esta controversia con la mayor

sensibilidad para así armonizar los intereses envueltos, conceden un remedio que tiene el efecto contrario. En el contexto particular de este caso, es insensible e indigno continuar exponiendo a la menor L.M.L.A. a un procedimiento judicial que supone revivir uno de los traumas más terribles que un ser humano puede vivir. Para disponer de este asunto con sensibilidad genuina, era necesario comprender la naturaleza de los sucesos que atravesó la menor L.M.L.A., de modo que pudiéramos palpar el dolor que sin lugar a duda le incapacita de continuar su participación.

Una aplicación concienzuda del derecho aplicable y de los criterios que se pautan en la opinión mayoritaria a la situación fáctica ante nos debió llevar a un resultado distinto. El verdadero balance de los intereses que están en controversia requería que se admitiera el testimonio anterior de la menor L.M.L.A., ante su no disponibilidad por razón de enfermedad o impedimento mental. Por esta razón, disiento.

## I

El 5 de abril de 2018 el Ministerio Público presentó dos denuncias contra el Sr. José Lugo López (señor Lugo López o recurrido) por infringir el Artículo 131 y el Artículo 133 (A) del Código Penal de 2012, sobre incesto, 33 LPRA sec. 5192, y sobre actos lascivos, cuando la víctima era menor de dieciséis años, 33 LPRA sec. 5194, respectivamente. Esto, por hechos presuntamente acaecidos entre el 2013 y el 2015

contra su hija biológica, la menor L.M.L.A.[1]

Tras la vista de necesidad correspondiente, se permitió que la menor testificara en la vista preliminar —que se celebró el 1 de febrero de 2018 y el 14 de marzo de 2018— mediante el sistema de circuito cerrado.[2] Para ese momento, la menor L.M.L.A. contaba con solo nueve años de edad. A lo largo de su testimonio, el tribunal tuvo que decretar varios recesos para permitirle a la menor L.M.L.A. recomponerse tras estallar en llanto al relatar sus vivencias. A pesar de la dificultad palpable que tuvo para expresarse, la menor L.M.L.A. pudo completar su testimonio y la defensa del señor Lugo López **tuvo la oportunidad de contrainterrogarla, lo cual hizo**. Evaluada la prueba desfilada, el Tribunal de Primera Instancia, encontró causa para acusar al señor Lugo López por los delitos imputados.

El 29 de marzo de 2022 el foro de instancia dio inicio al juicio por jurado. Es decir, **luego del transcurso de cuatro años desde que se celebró la vista preliminar**. Sin embargo, durante el interrogatorio directo, y a solo a pocos minutos de comenzar su relato sobre los hechos atinentes al delito de incesto, la menor L.M.L.A. rompió en llanto. Por esta razón, se decretó un receso. La Técnica de Asistencia

---

[1] Los hechos atinentes a los delitos que se le imputan al Sr. José Lugo López son en extremo gráficos y no abonan a la controversia puntual que nos ocupa, a saber: la no disponibilidad de la menor como testigo de cargo. Por ello, se dejan fuera del relato de la situación fáctica del caso.

[2] Esta decisión advino final y firme tras la determinación de confirmación del Tribunal de Apelaciones en el caso <u>Pueblo v. Lugo López</u>, KLCE201700798, KLCE201700831.

a Víctimas y Testigos la acompañó al baño, **donde se desmayó y quedó inconsciente**. La menor L.M.L.A. fue transportada de emergencia al Hospital San Antonio en Mayagüez, y posteriormente fue trasladada al Hospital Metropolitano Psiquiátrico de Cabo Rojo ("Hospital Metropolitano").

A raíz de estos sucesos, el Ministerio Público presentó una *Moción informativa y en solicitud de sustitución de testimonio* el 31 de marzo de 2022. Allí solicitó que se declarara a la menor L.M.L.A. como testigo no disponible al amparo de la Regla 806(A)(4) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 806. Esto, pues, según arguyó, esta sufrió un evento traumático que le ocasionó el desmayo, justamente luego de iniciado el testimonio en contra del recurrido. Sustentó su solicitud con declaraciones juradas de la Sra. Marieli Dávila Pérez, trabajadora social, y del Dr. Jaime Viqueira Mariani, pediatra. Ambos profesionales atendieron a la menor L.M.L.A. en el Hospital San Antonio en Mayagüez.

Tras varios sucesos posteriores, el 21 de junio de 2022 el Tribunal de Primera Instancia celebró una vista de necesidad al amparo de la Regla 109 (A) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 109, para dirimir la controversia que nos ocupa. Es decir, si la menor L.M.L.A. podía ser declarada testigo no disponible. A estos efectos, el Ministerio Público presentó los testimonios de la y los facultativos siguientes: la Dra. Stephanie Aguilar Zapata (psiquiatra Aguilar Zapata); el Dr. Luis A. Pérez Tijerina (doctor Pérez Tijerina), y el Dr. Alexander J. Arce González

(psicólogo Arce González). El testimonio de la y los profesionales de la salud puede resumirse de la forma siguiente.

### a. Psiquiatra Aguilar Zapata[3]

Declaró que al atender a la menor L.M.L.A., **esta presentó síntomas de depresión y ansiedad severa y que manifestó episodios de disociación o psicosis**.[4] Además, la menor mostraba episodios de ansiedad, tristeza, llanto constante, cambios de apetito y desconexión de la realidad.[5] Luego de indagar sobre los estresores que le provocaron su estado mental y físico, "**la menor le manifestó que el detonante de su ansiedad era el proceso legal del cual participó**".[6] Específicamente, declaró que cuando se hablaba del tema del proceso judicial, los eventos disociativos se activaban, así como varios movimientos involuntarios.[7] Además, declaró que la menor le indicó que participaba "**de un proceso legal que le generaba ansiedad, cambios de sueño**

---

[3] La psiquiatra Aguilar Zapata testificó que se especializa en el área de psiquiatría de niños y adolescentes en el Hospital Metropolitano Psiquiátrico de Cabo Rojo y que, como parte de sus responsabilidades, se encargaba de realizar las evaluaciones y diagnósticos, de velar porque la o el menor cumpla con los criterios de admisión, y de establecer un tratamiento para atender la sintomatología del o la paciente.

[4] Véase *Petición de certiorari*, pág. 15. Véase, además, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 1:50:38- 1:52:10).

[5] Véase *Petición de certiorari*, pág. 15. Véase, además, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 1:52:12- 1:52:39).

[6] *Petición de certiorari*, pág. 15. Véase, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 1:54:24-1:55:35).

[7] Véase *Petición de certiorari*, pág. 15. Véase, además, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 1:55:53- 1:56:57).

**y de apetito, que le comenzaron desde antes de llegar a Puerto Rico**".[8]

Según su criterio clínico, la psiquiatra Aguilar Zapata testificó que **la menor L.M.L.A. no estaba lista para ser sometida nuevamente al proceso judicial del que formaba parte**.[9] Sobre las **consecuencias posibles de exponer a la menor a estos estresores**, indicó que esto **podría ocasionarle la exacerbación de los síntomas de depresión y ansiedad severa que ya experimentaba, de forma tal que su reincorporación a la realidad podría ser más lenta y con más dificultad**.[10]

A preguntas de la defensa del señor Lugo López durante el contrainterrogatorio, la psiquiatra Aguilar Zapata admitió que su intervención fue dirigida a establecer si la menor L.M.L.A. cumplía con los criterios para ser hospitalizada, y no para conocer si podía testificar durante el juicio.[11] A su vez, reconoció que existían peritos dirigidos a emitir una opinión sobre la capacidad de una o un testigo para testificar en corte.[12] También indicó que

---

[8] *Petición de certiorari*, pág. 15. Véase, además, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 1:58:21- 1:58:45).

[9] Véase *Petición de certiorari*, pág. 16. Véase, además, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 2:00:25- 2:00:52).

[10] Véase *Petición de certiorari*, pág. 16. Véase, además, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 2:03:18-2:04:48).

[11] Véase *Petición de certiorari*, pág. 16. Véase, además, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 2:14:16- 2:17:30).

[12] Véase *Petición de certiorari*, pág. 16. Véase, además, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 2:19:41- 2:21:09).

solamente atendió a la menor mientras estuvo en el hospital.[13] En el contexto del tratamiento médico que se le brindó en el hospital, la psiquiatra Aguilar Zapata manifestó que no se le diagnosticó a la menor L.M.L.A. una condición permanente.[14]

### b. Doctor Pérez Tijerina[15]

Durante el interrogatorio directo, el doctor Pérez Tijerina testificó que trabaja en el área de emergencias y de salud mental del Hospital Metropolitano.[16] Expresó que la menor L.M.L.A. no hablaba mucho y que luego de dialogar con la psiquiatra, se hizo el procedimiento para que se admitiera en el hospital.[17]

En el contrainterrogatorio, contestó que la menor fue admitida el 31 de marzo de 2022 y que su labor se circunscribió a recibirla en el hospital para realizar una evaluación preliminar y que luego la refirió a la psiquiatra Aguilar Zapata.[18]

### c. Psicólogo Arce González:[19]

---

[13] Véase *Petición de certiorari*, pág. 16. Véase, además, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 2:19:41- 2:19:51).

[14] Véase *Petición de certiorari*, pág. 16. Véase, además, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 2:23:00- 2:24:13).

[15] Se estipuló que el doctor Pérez Tijerina está cualificado como médico generalista y fue quien atendió a la menor en la Sala de Emergencias del Hospital Metropolitano en Cabo Rojo.

[16] Véase, Apéndice del *certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 2:42:00- 2:42:31)

[17] Véase *Petición de certiorari*, pág. 17. Véase, además, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 2:44:12:2- 2:48:18).

[18] Véase, Apéndice del *certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 2:48:50-2:49:10).

[19] El psicólogo Arce González testificó que posee un doctorado en psicología clínica y que labora en el área de psiquiatría adolescente en el Hospital Metropolitano de Cabo Rojo desde que abrió la división,

El psicólogo Arce González manifestó que el 1 de abril de 2022 evaluó a la menor L.M.L.A. en su oficina, quien no podía verbalizar a qué se debía su estado de ansiedad crítico.[20] Explicó que **tan pronto comenzó a indagar sobre el incidente que desencadenó en su hospitalización, <u>la menor L.M.L.A. se descompensó y tuvo un ataque psicogénico</u>**.[21] Esto último, según su testimonio, se refiere a un evento a nivel psicológico que surge de una experiencia traumática cuando estas memorias se encapsulan en el cerebro de la persona y, una vez esta se expone a ciertos estresores que evocan estas memorias, desemboca en este ataque que se asemeja a una convulsión, pero que no es a nivel biológico o fisiológico.[22] Con relación a la capacidad de la menor L.M.L.A. para testificar, el psicólogo Arce González indicó que era necesario que se le brindara tratamiento para examinar si podría testificar posteriormente, esto basado en un examen de vulnerabilidad y los factores de riesgo que la menor presente.[23] **"Afirmó que, al momento de su evaluación, <u>la</u>**

---

aproximadamente hace cuatro años, al momento de su testimonio. Como parte de sus funciones, conduce evaluaciones a las y los pacientes que llegan al hospital y provee un tratamiento particularizado a base de las necesidades de estas personas.

[20] Véase *Petición de certiorari*, pág. 17. Véase, además, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022,2:56:02-2:57:49).

[21] Véase, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022,2:57:09-2:57:31).

[22] Describió que el evento psicogénico que presenció, la menor se tiró al suelo y los ojos comenzaron a movérsele en varias direcciones. Expresó que este evento duró aproximadamente veinte minutos. Véase, *Apéndice del certiorari*, pág. 65 (Regrabación de la Vista del 21 de junio de 2022, 2:57:31-3:00:05).

[23] Véase *Petición de certiorari*, pág. 17. Véase, además, *Apéndice del certiorari*, pág. 65, (Regrabación de la Vista del 21 de junio de 2022, 3:00:51- 3:01:57).

**menor no estaba lista para enfrentar un proceso donde fueran a indagar sobre el evento que provocó esos síntomas**".[24]

En el contrainterrogatorio, a preguntas de la defensa del señor Lugo López, el psicólogo Arce González aclaró que su intervención no fue con el objetivo de identificar si la menor podría testificar en un proceso criminal, como tampoco está cualificado como psicólogo forense.[25] Sin embargo, expresó que "**todo lo relacionado [con el] evento puede ocasionar esa reacción traumática**".[26] Aceptó que no ha examinado nuevamente a la menor L.M.L.A., luego de que esta fue dada de alta.[27]

Concluida la Vista, el Tribunal les concedió a las partes cinco días para que sometieran por escrito sus argumentos.

En cumplimiento con lo anterior, el Ministerio Público presentó un escrito en el que enfatizó que solicitó la declaración de no disponibilidad de la testigo, la menor L.M.L.A., al amparo de la Regla 806(A)(4), *supra*, a saber, **por razón de enfermedad o impedimento físico**. Esto, contrario al criterio atinente a la Regla 806(A)(5), *supra*, sobre la no disponibilidad de testigos por no comparecer al

---

[24] *Petición de certiorari*, págs. 17-18. Véase, además, *Apéndice del certiorari*, pág. 65, (Regrabación de la Vista del 21 de junio de 2022, 3:02:32-3:03-11).

[25] Véase *Petición de certiorari*, pág. 18. Véase, además, *Apéndice del certiorari*, pág. 65, (Regrabación de la Vista del 21 de junio de 2022,3:03:51-3:04:47).

[26] *Petición de certiorari*, pág. 18. (Negrillas suplidas). Véase, *Apéndice del certiorari*, pág. 65, (Regrabación de la Vista del 21 de junio de 2022,3:05:41- 3:07:51).

[27] Véase *Petición de certiorari*, pág. 18. Véase, además, *Apéndice del certiorari*, pág. 65, (Regrabación de la Vista del 21 de junio de 2022, 3:07:57- 3:09:28).

Tribunal a presentar su testimonio. A diferencia del primero, según planteó, la no disponibilidad por incomparecencia le exige al Estado demostrar que ha realizado todas las gestiones razonables y de buena fe para lograr que la persona testigo comparezca y preste su testimonio en el juicio. Argumentó que, a la luz del derecho aplicable, no es requerido que la persona testigo sufra un daño emocional permanente previo a determinar su no disponibilidad.

Por su parte, el señor Lugo López presentó una *Moción en cumplimiento de orden* en la que esbozó que el Ministerio Público no cumplió con la carga probatoria pertinente para establecer que la menor L.M.L.A. podía ser declarada testigo no disponible. Arguyó que le correspondía al Estado desplegar todos los esfuerzos razonables y de buena fe para obtener el testimonio de la testigo en el juicio. Por otro lado, insistió que era indispensable que el Ministerio Público presentara prueba sobre la probabilidad actual o en un futuro razonable para poder determinar la disponibilidad de la menor L.M.L.A.

El 5 de agosto de 2022 el Tribunal de Primera Instancia emitió una *Resolución* en la que declaró *no ha lugar* el petitorio del Ministerio Público y ordenó la continuación de los procedimientos. Concluyó que, "[s]egún establecido jurisprudencialmente[,] es deber del Ministerio Público realizar esfuerzos razonables para producir al testigo, aunque ésta sea una remota. En autos, con la prueba

desfilada, el Tribunal entiende que no cumplió con su obligación de demostrar que la menor estaba psicológicamente no disponible para testificar".[28] Sostuvo que, de los testimonios ofrecidos en la Vista de la Regla 109, *supra*, se desprendía que no se logró determinar el diagnóstico de la menor L.M.L.A., así como tampoco que esta recibiese tratamiento adicional, psiquiátrico o psicológico, de manera tal que pudiera lograrse su comparecencia y se ofreciera su testimonio en corte.

Inconforme, el Estado, por conducto de la Oficina del Procurador General, presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. Expedido el recurso, y al contar con la comparecencia de ambas partes, el foro apelativo intermedio confirmó la determinación del foro primario.

El Tribunal de Apelaciones coincidió con la postura del señor Lugo López, y lo determinado por el foro primario, a los efectos de que el Estado incumplió con el estándar probatorio aplicable a la Regla 804(A)(4) de Evidencia, *supra*. Coligió que el Estado falló en establecer la concurrencia del impedimento mental que, al presente o en un futuro razonable, imposibilite la participación de la menor L.M.L.A. como testigo en el juicio. Señaló que los testimonios vertidos en la vista de necesidad se circunscribieron a la condición de la menor al momento de su intervención con esta. Por tanto, estableció que ninguno de

---

[28] *Apéndice del certiorari*, pág. 112.

estos profesionales pudo aportar información sobre la capacidad de la menor para testificar al momento de estos ofrecer sus testimonios.

A su vez, entendió que el Estado tenía la obligación y el deber de preparar a la menor L.M.L.A. a través de un tratamiento psicológico —como lo hizo en la etapa de la vista preliminar— previo a que esta testificara en el juicio. Expresó que "[e]sta omisión ciertamente le produjo un efecto que se manifestó al inicio del juicio, ello por ser abruptamente sometida a una situación que, sin duda alguna, la afectó de manera considerable".[29] Por tanto, ordenó que el Ministerio Público procurara ofrecer un tratamiento psicológico adecuado a la menor L.M.L.A., antes a la continuación del juicio.

En desacuerdo, el Estado compareció ante esta Curia y señaló, en síntesis, que los foros *a quo* erraron: (1) al exigir una serie de requisitos que no estaban contemplados para que una persona sea declarada testigo no disponible al amparo de la Regla 806(A)(4), *supra*, y (2) al no declarar a la menor L.M.L.A. como testigo no disponible a pesar de que se demostró que, luego del suceso traumático que esta sufrió al intentar testificar en el juicio el 29 de marzo de 2022, estaba imposibilitada de continuar por razón de enfermedad o impedimento mental.

---

[29] Íd., pág. 191.

El marco jurídico que gobierna esta controversia es el siguiente.

## II

### A. Derecho a la confrontación

Nuestra Constitución y su contraparte federal protegen el derecho fundamental de las personas acusadas de delito, a confrontar y carearse con aquellas personas que testifiquen en su contra. Art. II, Sec. 11 Const. ELA, LPRA, Tomo 1; Emda. VI, Const. EE. UU., LPRA, Tomo 1. Como es bien sabido, la denominada *cláusula de confrontación* consiste en tres ramificaciones procesales: (a) el derecho a confrontar cara a cara a las y los testigos de cargo; (b) el derecho a contrainterrogarlos, y finalmente, (c) el derecho a excluir la prueba de referencia que el Estado intente presentar en su contra. Pueblo v. Pérez Santos, 195 DPR 262, 269-270 (2016); Pueblo v. Santos Santos, 185 DPR 709, 720 (2012). Véase, también, E.L. Chiesa Aponte, *Procedimiento criminal y la Constitución: Etapa adjudicativa*, 1ª ed., San Juan, Ed. SITUM, 2018, págs. 62-63.[30]

En lo atinente a la controversia que nos ocupa, en Crawford v. Washington, 541 U.S. 36 (2004), la Corte Suprema de los Estados Unidos resolvió que, en cuanto a la tercera vertiente de la cláusula de confrontación, esta se activa únicamente cuando se trata de declaraciones de carácter

---

[30] Véase, también, M.R. Reyes Negrón, El derecho al careo de los acusados en tiempos de pandemia, 55 Rev. Jur. UIPR 371, 383-384 (2021).

testimonial.[31] Véase Chiesa Aponte, *op. cit.*, pág. 90. De forma tal que, de tratarse de declaraciones no testimoniales, la admisión de la prueba se regirá únicamente por lo dispuesto en las Reglas de Evidencia. Íd. Según razonó la Corte Suprema federal:

> "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. Pueblo v. Pérez Santos, supra, (citando a Crawford v. Washington, *supra*, pág. 51).

El Máximo Foro federal sostuvo que, si la declaración que se pretende presentar en el juicio es de carácter testimonial, y la persona declarante no comparece en corte, el derecho a la confrontación exige que se determine la no disponibilidad de la persona testigo y que la persona acusada haya tenido oportunidad de contrainterrogar sobre la declaración testimonial, para que esta pueda ser admisible. Pueblo v. Pérez Santos, *supra*, págs. 270-271; Pueblo v. Santos Santos, *supra*, pág. 721; Pueblo v. Guerrido López, 179 DPR 950, 967 (2010); Crawford v. Washington, *supra*, pág. 51. Véase, además, Chiesa Aponte, *op. cit.*, pág. 90.

Superado el escollo constitucional, procede analizar si la prueba de referencia ofrecida cumple con los criterios establecidos en nuestras Reglas de Evidencia.

---

[31] Conforme a lo reconocido en Pueblo v. Guerrido López, 179 DPR 950, 962 (2010), "Crawford v. Washington, *supra*, y su progenie, constituyen jurisprudencia normativa para nuestra jurisdicción. Esto porque la Cláusula de Confrontación inmersa en la Sexta Enmienda de la Constitución de Estados Unidos aplica a Puerto Rico".

**B. Prueba de referencia**

La Regla 801(c) de Evidencia, 32 LPRA Ap. VI, R. 801, establece que es prueba de referencia toda declaración "que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Como norma general, los tribunales no admitirán declaraciones contenidas dentro de esta definición, a no ser que se satisfagan los criterios enmarcados en las exclusiones permitidas por ley. Regla 804 de Evidencia, 32 LPRA Ap. VI, R. 804.

Por su parte, la Regla 806 de Evidencia, *supra*, reconoce ciertas excepciones a la norma general antes mencionada que, a su vez, están condicionadas a la determinación de no disponibilidad de la persona declarante. La Regla 806(A), *supra*, define aquellas instancias en las que se entenderá que la persona testigo no está disponible, a saber: (1) está exenta de testificar luego de la determinación del Tribunal sobre el reconocimiento de un privilegio en estas Reglas en relación con el asunto u objeto de su declaración; (2) insiste en no testificar en relación con el asunto u objeto de su declaración a pesar de que el Tribunal le ordenó que así lo hiciera; (3) testifica que no puede recordar sobre el asunto u objeto de su declaración; (4) al momento del juicio o vista, ha fallecido **o está imposibilitada de comparecer a testificar por razón de enfermedad o impedimento mental o físico**; o (5) está ausente de la vista y quien propone la declaración ha desplegado diligencia para conseguir su

comparecencia mediante citación del Tribunal. Mientras que el inciso (B) de la referida regla expone aquellas instancias en que, por excepción a la regla general, la prueba de referencia será admisible. En lo pertinente, cuando la persona declarante no está disponible y así lo determina el Tribunal, será admisible el testimonio anterior dado como testigo en otra vista en ese u otro procedimiento si la parte contra quien se ofrece tuvo la oportunidad y motivo similar para contrainterrogarlo. 32 LPRA Ap. VI, R. 804.

### C. La Regla 806(A)(4): Testigo no disponible por causa de impedimento físico o mental

Este Tribunal no ha tenido la oportunidad de interpretar esta excepción a la regla general de inadmisibilidad de prueba de referencia. Sin embargo, son varios los tratadistas que han formulado distintas tesis para interpretar el mandato de la referida Regla.

Nos comenta el tratadista, Prof. Ernesto L. Chiesa Aponte (profesor Chiesa Aponte), que

> [e]l declarante que ha fallecido al momento de presentarse la declaración está, por supuesto, no disponible para testificar. **Pero también lo está cuando su condición de salud, mental o física, está tan deteriorada que no podrá comparecer en <u>un futuro predecible</u>**. Si se trata de un testimonio importante, el tribunal no debe tomar livianamente la determinación de que el declarante no está disponible para testificar. Podría a posponerse la vista o dejar para el final su testimonio. **Hay que tener especial cautela cuando se trata de un testigo de cargo. <u>Pero si es manifiesta la improbabilidad de que el testigo pueda comparecer en un futuro razonable, debe hacerse la determinación de no disponibilidad</u>**. (Negrillas y subrayado suplidos). E. L. Chiesa Aponte, *Reglas de Evidencia comentadas*, 1ª ed., San Juan, Ed. SITUM, 2016, pág. 325.

En cuanto a la determinación de indisponibilidad al amparo de esta excepción, expresa que se refiere a "un **grado**

**considerable** de incapacidad física o mental". (Negrillas suplidas). E.L. Chiesa Aponte, *Compendio de Evidencia (En el sistema adversarial)*, 1ª ed., Ciudad de México, Ed. Tirant Lo Blanch, 2021, pág. 378. Específicamente, detalla que

> [l]a carga de establecer la no disponibilidad del declarante la tiene el proponente que pretende la admisión de prueba de referencia. **Si la condición incapacitante del declarante es seria y probablemente no mejorará, el tribunal debe declararlo "no disponible". Pero si la condición no es tan seria y la recuperación es probable, el tribunal puede decretar una posposición o alterar el orden de la prueba para posponer para otro día el testimonio del declarante, si el juicio se va a prolongar por mucho tiempo.** (Negrillas suplidas). Íd., págs. 378-379.

Ulteriormente, el profesor Chiesa Aponte propone que los tribunales se aproximen a la controversia con un análisis multifactorial; es decir, que tomen en cuenta: "[la] gravedad de la condición, [la] importancia del testimonio y [la] probabilidad de recuperación del declarante". Íd., pág. 379. Además, como en el caso que nos ocupa, estamos llamados a considerar si las declaraciones testimoniales del declarante cumplen con los criterios establecidos en Crawford v. Washington, *supra*, y su progenie. En concordancia, si el testimonio que se pretende presentar es uno anterior al amparo de la Regla 806(B)(1), supra, el conflicto constitucional se desvanece. Íd., pág. 378.

Por su parte, el Prof. Enrique Vélez Rodríguez (profesor Vélez Rodríguez) nos indica que, al amparo de esta excepción a la regla general de exclusión, los criterios de "la condición, [la] duración y la gravedad de la enfermedad son factores cruciales en la determinación de indisponibilidad". (Bastardillas en el original). E. Vélez

Rodríguez, *La prueba de referencia y sus excepciones*, 1ª ed., San Juan, Ed. InterJuris, 2018, pág. 247. Además, reconoce la diversidad que puede comprender esta causal, por lo que, según interpreta, "parece aconsejar **una adjudicación con arreglo a los méritos de la situación particular**, incluida la de ejercer aquellas opciones que permitan la prestación del testimonio en vivo". (Negrillas suplidas). Íd.

D. **Menores de edad como testigos: Particularidades en casos de delitos sexuales**

Como expresé anteriormente, para disponer de esta controversia adecuadamente, es imprescindible contextualizar la situación particular que se encuentra ante nuestra consideración.

Tratadistas como McCormick, Mueller y Kirkpatrick abundan sobre el alcance de la contraparte federal de la regla en cuestión, a saber, la Regla 804(a)(4), de las Reglas de Evidencia federal. En particular, **exploran la no disponibilidad de la persona declarante cuando esta es una menor de edad en el contexto de un caso abuso sexual.**

Por su parte, la obra del tratadista Charles T. McCormick (McCormick) señala que, con frecuencia, la justificación de no disponibilidad de la o el menor de edad se cimienta en que el acto mismo de testificar le causará un trauma emocional, lo que imposibilita su comparecencia en el juicio. McCormick, 2 Evidence § 253 (8ª ed.) (2020) (citas

omitidas). ("*Often, a finding of unavailability is justified based upon a determination that testifying will cause emotional trauma to the child and that the child is therefore unavailable*").

Los tratadistas Mueller y Kirkpatrick examinan el supuesto de una indisponibilidad psicológica en el contexto de casos de abuso sexual contra menores de edad, de modo tal que se expondrían a la posibilidad de un **trauma psicológico severo**. Sobre ello, destacan que:

> **In the modern setting of trials for abuse of children, both federal and state statutes provide that the victim is to be viewed as unavailable as a witness if testifying would likely result in severe trauma or if she simply cannot testify in the setting of the courtroom.** Typically[,] such statutes apply as well to other children who are eyewitnesses to child abuse, who may be victims in other ways, and for ease of discussion we refer to these children too as victims. In this setting of "psychological" unavailability or necessity, the statutes provide for remote testimony by the victim using one-way or two-way video monitor systems to transmit her image and words to the courtroom, and for special videotaped depositions taken in advance for use at trial. In 1990, Congress followed the lead of the states and enacted a statute authorizing remote testimony and videotaped depositions in federal child abuse prosecutions if the victim is psychologically unavailable, but the statute is seldom invoked because child abuse is prosecuted in federal courts relatively rarely. The statute does not create a hearsay exception for statements by child abuse victims, but these sometimes fit the catchall or some categorical exceptions, and all states have special statutes creating an exception for statements by child victims.
>
> .   .   .   .   .   .   .   .
>
> When it is expected that a youthful victim would be seriously traumatized by testifying in court, usually showing psychological unavailability involves, and probably requires, expert testimony. Abuse victims often suffer what amounts to ongoing trauma typified by nightmares, mistrust of adults (or adult men), behavioral difficulties at home and school indicating some regression from prior development, and sometimes other problems (bedwetting and sleep disorders). **These symptoms help experts conclude that compelling testimony from the child would be impossible or damaging—that she simply could not testify or would suffer serious harm if she did.** (Negrillas suplidas). C.B. Mueller, Laird C. Kirkpatric, 5 Federal Evidence § 8:116 (4ª ed.) (Marzo 2024) (citas omitidas).

Asimismo, se han explorado las consecuencias adversas de que un niño o una niña víctima de abuso sexual puede experimentar al testificar en corte. En ese contexto, se ha reconocido que la angustia emocional que acarrea este acto puede acompañarlos hasta la adultez, lo que limita su desarrollo en comparación con sus pares. L. Christine Brannon, *The Trauma of Testifying in Court for Child Victims of Sexual Assault v. The Accused's Right to Confrontation*, 18 Law & Psychol. Rev. 439, 445-446 (1994) (citas omitidas). "Dicha angustia mental se refleja en la víctima en forma de depresión, ansiedad y algunos síntomas psicosomáticos. Debido a la interrupción del desarrollo infantil, las consecuencias negativas de la participación en el proceso legal pueden ser más trascendentales para un niño o una niña que para una persona adulta". (Traducción suplida). <u>Íd.</u>

Nótese que, lo que resalta de lo anterior es que las personas menores de edad víctimas de abuso sexual se exponen a sufrir un nuevo trauma al ser compelidas a declarar sobre estas experiencias traumáticas. Esta consecuencia sustancial y perjudicial se cataloga como "*secondary victimization*" o **revictimización.** Sobre este particular, se expresa que:

> Court testimony is an extremely stressful, frightening and formidable event, especially for a vulnerable young child. The child is placed in the unfamiliar and intimidating environment of a courtroom, and asked to participate in a process that is foreign and perplexing. [She or he] has to face the defendant, who the child often perceives as a threatening and dangerous figure. The child is required to answer difficult questions in public, and to go through harsh questioning by unsympathetic strangers. The child's truthfulness is repeatedly doubted and questioned throughout the process, and this is often perceived as a humiliating experience. **Moreover, the child has to repeatedly re-live the traumatic event [she or he] witnessed through recurring**

**interrogations by law enforcement and in court. When the defendant is known or related to the child witness, further difficulties, including intense guilt and loyalty conflicts, may arise. <u>The multitude of stressors involved in this experience can trigger extreme levels of anxiety and psychological strain, often referred to as "secondary victimization</u>.**" (Negrillas y subrayado suplidos). Michal Gilad, *Falling Between the Cracks: Understanding Why States Fail in Protecting Our Children from Crime,* U. ILL. L. REV. 907, 928 (2019) (citas omitidas).

**E. Casuística estatal persuasiva**

Por su carácter persuasivo, especialmente ante la falta de pronunciamientos de este Tribunal sobre la controversia de umbral, recurro a la casuística a nivel de los Estados Unidos al abordar este tema.

En <u>People v. Gomez</u>, 26 Cal.App.3d 225 (1972), la Corte de Apelaciones para el Segundo Circuito de California confirmó una sentencia en la que se declaró culpable al acusado de tener relaciones sexuales ilegales con una mujer menor de dieciocho años. El peticionario solicitó la revocación de esta, tras argüir que el foro inferior erró al admitir prueba de referencia, luego de que se declarara a la testigo no disponible por incapacidad mental.

Al igual que el caso de autos, el texto de la disposición que permitía la declaración de indisponibilidad de la testigo por razón de impedimento mental o físico,[32] no

---

[32] Textualmente, las Reglas de Evidencia establecían como una de las definiciones del declarante no disponible, cuando este está "muerto o incapaz de asistir o testificar en la audiencia debido a una enfermedad o dolencia física o mental existente en ese momento". (Traducción suplida) Véase, <u>People v. Gomez</u>, 26 Cal.App.3d 225, 227-228 (1972) (Here, in establishing unavailability, the People relied on Evidence Code section 240, subdivision (a)(3), reading in pertinent part: "(a) ... 'unavailable as a witness' means that the declarant is: ... (3) *Dead or unable to attend or to testify at the hearing because of then existing physical or mental illness or infirmity*.").

requería que el Estado demostrara diligencias razonables para que la testigo se presentara en el juicio. Íd., pág. 228. Sobre este particular, la Corte señaló que la jurisprudencia citada por las partes sobre los requisitos demostrativos de una diligencia razonable era inadecuada. Íd.

A su vez, al examinar la determinación de indisponibilidad de la testigo, la Corte expuso que:

> [The] evidence showed that the crime occurred on May 10, 1971. The complaining witness had become 15 years old just 8 days before, on May 2, 1971. On **June 4, 1971**, she was admitted to Camarillo State Hospital. Two medical doctors, staff psychiatrists, testified at the court hearing which was held **July 28, 1971**, to determine the girl's availability. Counsel stipulated to the doctors' qualifications. **Dr. Martin** was personally in charge of the girl's care and treatment. He **testified that she was very vulnerable to stress; she had a tendency to psychomotor seizures which were difficult to diagnose and treat; she had shown significant improvement although such was rather "delicate and tedious"; in his opinion there was a "strong possibility" that it would be detrimental to her welfare to appear in court.** While under his care at the hospital, she had "become rather hysterical with minimal provocation." He concluded she could become "very vulnerable and regressing backwards and wipe out the improvement that she's shown ... and ... as her physician, I don't want to risk that happening."
>
> **Dr. Rieger testified that it is his job to decide whether a child should be admitted to the hospital.** He reviews all girls' records as part of his procedure. Having reviewed this child's records, **it was his opinion that coming to court and testifying "is a very traumatic experience to a child" such as this one. He concluded she would be "definitely affected" by it and he "would strongly recommend against it"; he was "greatly concerned that it would grossly affect the child's present and possibly future health, mental health ... I would be very concerned over the consequences which might ensue from her appearing here under such stress or conditions."** (Negrillas suplidas). Íd., págs. 228-229.

De acuerdo con la decisión a la que arribó el foro de instancia, la Corte de Apelaciones concluyó que, aun cuando la persona testigo que no esté disponible por razón de incapacidad pueda finalmente recuperarse, si tal

recuperación se espera en un futuro incierto o lejano, no existe una razón de peso para negar la admisión del testimonio brindado en la vista preliminar. Íd., pág. 230.

Por otra parte, y más recientemente, la Corte Suprema de Michigan en People v. Duncan, 835 N.W.2d 399 (2013), encontró no disponible a la testigo de cargo, una menor de cuatro años, en un caso de delitos sexuales, al amparo de Regla 804(a)(4) de las Reglas de Evidencia de Michigan. Específicamente, se entiende que el testigo no está disponible bajo esta causal "*because of ... then existing physical or mental illness or infirmity*[.]" Íd., pág. 404. Al circunscribirse al asunto de enfermedad o dolencia mental, la Corte Suprema coligió que una de las causas que pueden redundar en la debilidad de la mente es la edad de la persona testigo. Íd., pág. 406. Asimismo, reconoció que la citada regla no requería una determinación de incapacidad permanente o de larga duración. Sobre este asunto expresó:

> **The phrase "then existing" specifically limits the temporal scope within which a witness's availability under MRE 804(a)(4) may be assessed; the only relevant reference point is the point at which the witness takes the stand. As a result, the declarant need not suffer from a permanent illness or infirmity.** Thus, the fact that RS was competent and available to testify at two preliminary examinations does not affect the determination whether she was mentally capable or infirm for purposes of MRE 804(a)(4) at the time her testimony was sought at trial. **Rather, the only relevant inquiry is her condition at the time she was called to testify.**
>
> **In holding that a child may be mentally infirm in the type of extraordinarily stressful trial situation like the one that existed here, we recognize the obvious truth that children lack the same level of mental maturity as that exhibited by and expected of most adults. Legal and psychological research confirms this uncontroversial proposition. As a result of these limitations, young children are less mentally equipped to cope with severe**

**emotional distress. Testifying in open court can be a harrowing experience for anyone, and young children are much more susceptible to emotional breakdowns than adults. Indeed, testifying in open court "can make some children tearful, ill, or inarticulate in the courtroom.... Under the stress of testifying, some children may regress to a more immature level of behavior." When these emotional terrors are severe and a child has not developed the mental capacity to overcome this distress, an emotional breakdown may eliminate any possibility of securing testimony from the young child.** (Negrillas suplidas). Íd., págs. 406-407. (Citas omitidas).

Tras el análisis esbozado, la Corte Suprema coligió que no existía duda de que, *al momento de testificar en el juicio*, la menor estaba emocionalmente abrumada y se encontraba mentalmente incapaz de superar esta angustia y, por lo tanto, no podía afirmar que podía testificar con sinceridad. Íd., pág. 408. Por ello, determinó que el foro de instancia había abusado de su discreción al encontrarla disponible para testificar en el juicio. Íd.

**III**

La mayoría de este Tribunal sostiene que el Estado falló en demostrar que la menor L.M.L.A. no estaba disponible para testificar en el juicio, debido a que no presentó prueba sobre su estado mental al momento de la vista de necesidad. Difiero, pues entiendo que **lo anterior es innecesario e improcedente a la luz del caso ante nos.**

Los tratadistas reseñados comentan que la parte que busca la admisión de prueba de referencia a través de una de las causales de la Regla 806, *supra*, ——especialmente cuando se pretende utilizar como prueba de cargo en contra de una persona acusada—— está llamada a establecer de manera

satisfactoria que **la persona testigo no estará disponible en un futuro predecible o razonable**.

En esa coyuntura, coincido con la mayoría de este Tribunal en que debemos adoptar una serie de criterios que guíen a las y los juzgadores de instancia para determinar si procede la determinación de no disponibilidad de la persona testigo. Estos criterios, claro está, deben cumplir con el estándar de <u>Crawford</u>, *supra*, cuando estamos ante declaraciones testimoniales. Asimismo, es evidente que, bajo esta causal, el Estado no está llamado a realizar ejercicios razonables o de buena fe en pro de superar la incapacidad física o mental que experimente la persona declarante. Finalmente, por la diversidad de situaciones que puede abarcar esta causal, **es menester embarcarnos en un análisis caso a caso que considere la totalidad de las circunstancias.** Pese a lo anterior, mi compañera y mis compañeros fallan en aplicar adecuadamente los criterios que pautan a la controversia de autos.[33] Me explico.

No albergo duda alguna de la **importancia que tiene el testimonio** de la menor L.M.L.A. en el juicio en contra del señor Lugo López. Ahora bien, es necesario recalcar que la menor L.M.L.A. ha tenido que relatar los hechos atinentes a su testimonio en múltiples ocasiones. A lo largo de su

---

[33] Es decir, "(1) la gravedad de la condición, (2) la importancia del testimonio, (3) la probabilidad de recuperación, (4) el potencial de que el acto de testificar agrave la condición de la persona testigo y (5) el perjuicio que pueda ocasionar la dilación del proceso al acusado, por su derecho a un juicio rápido, o en cualquier otro caso a la parte afectada".

infancia, y ya entrada en la adolescencia, ha estado sujeta a un procedimiento judicial que parece no tener fin. En el punto culminante de su participación en este, *llegado el día del juicio y al ser llamada a testificar*, la menor L.M.L.A., a los pocos minutos de comenzar su recuento de los hechos pertinentes al delito de incesto, irrumpió en llanto y no pudo continuar.

La **gravedad de su estado físico y mental** significó una pausa en la celebración del juicio y su reclusión en una institución hospitalaria. Durante su tratamiento, **los profesionales de la salud que la atendieron advirtieron que no recomendaban que continuara testificando, pues las consecuencias podían ser sustancialmente nefastas.** Sus síntomas, incluso, se fueron manifestando desde antes de que la menor L.M.L.A. testificara en el juicio cuando, previo a trasladarse a Puerto Rico, expresó que ya presentaba cambios en su apetito y sueño, así como la sensación de ansiedad. La idea de participar nuevamente en el procedimiento judicial en contra de su padre biológico tuvo un impacto sustancial en su estado de ánimo. Como si lo anterior no fuera suficiente, sus ataques psicogénicos y de disociación se activaban con la sola mención del procedimiento judicial o de su testimonio en corte.

Su **posible recuperación**, según intimó el psicólogo Arce González, estaba atada al supuesto de que recibiera tratamiento médico, sin garantía alguna de que, en efecto, pudiese testificar. Peor aún, no existía certeza de que, si

se le forzaba a continuar, su salud no se hubiera expuesto a un daño sustancial. Es decir, existe el **potencial** real de que su condición se agrave al ser obligada a testificar nuevamente. Obsérvese que los hechos sobre los que la menor L.M.L.A. está llamada a testificar ocurrieron presuntamente entre los años 2013 y 2015. Al día del evento psicogénico que sufrió la menor L.M.L.A. durante el juicio, al exigírsele revivir su trauma, *habían transcurrido casi diez años desde el primer evento que dio paso a las acusaciones del Ministerio Público.* Por otro lado, considerando que el proceso penal inició en el 2018, es evidente que este ya ha sido **dilatado lo suficiente**. Es palpable **la improbabilidad** de que la menor L.M.L.A. se recupere en un futuro predecible o razonable, y no hay razón de peso para seguirla sometiendo a una nueva evaluación para llegar a tal conclusión.

**Al aplicar los criterios antes mencionados, y teniendo en cuenta las particularidades de un caso de delitos sexuales y una víctima menor de edad como testigo, es forzoso concluir que la menor L.M.L.A. no estaba disponible para testificar en el juicio y no lo estará en un futuro razonable o predecible. Tristemente, para una mayoría de esta Curia lo anterior es insuficiente.**

Según la interpretación del derecho aplicable que surge de la opinión mayoritaria, es necesario presentar prueba actual de la menor para satisfacer el criterio de la Regla 806(A)(4). Como ya expresé, esto no solamente es un ejercicio innecesario en el contexto particular que tenemos ante

nuestra consideración, sino que deja desprovista de protección y expone peligrosamente a la menor L.M.L.A. a otro trauma: **la revictimización**.

Está claro que la jurisprudencia y los estudios pertinentes a las personas menores de edad, víctimas de abuso sexual, demuestran las consecuencias terribles a las que se exponen al testificar en un procedimiento judicial en contra de su presunto agresor o agresora. Estas consecuencias pueden perseguirles hasta la adultez, impidiéndole al o la menor que se desarrolle al mismo ritmo que sus pares. Esto, debido a que el trauma que experimentaron durante su niñez puede retrasar el desarrollo cognitivo y emocional ordinario. Trauma que puede exacerbarse cuando es sometido o sometida, además, a un procedimiento judicial en donde están llamados a testificar sobre los relatos más crudos, desgarradores, vergonzosos y dolorosos. Relatos que van a la médula de su propia dignidad.

Es nuestro deber realizar un balance justo de intereses y derechos. Reconozco la primacía que tiene el derecho a la confrontación en nuestro ordenamiento jurídico. Sin embargo, también es ineludible recordar que este derecho no es absoluto. Por tanto, como en la controversia de autos, es nuestra responsabilidad examinar **todos los intereses** que están en juego a la hora de deliberar sobre la admisión de prueba de referencia en contra del señor Lugo López en contravención al derecho de confrontación que le cobija.

En este caso, la menor L.M.L.A. testificó ampliamente durante la vista preliminar y el señor Lugo López —a través de su representación legal— tuvo la oportunidad de contrainterrogarla *in extenso*, y así lo hizo. Llegado el día del juicio, y tras iniciar su testimonio, la menor L.M.L.A. estuvo imposibilitada de continuar su exposición de los hechos tras estallar en llanto, desplomarse y ser trasladada al hospital, en donde continuó presentando síntomas ligados al procedimiento judicial del que participaba. **Su temprana edad, los relatos sobre los cuales testifica, los síntomas y padecimientos que experimentó justo antes y luego de sentarse a testificar, y el tiempo sustancial que ha demorado el procedimiento penal, demuestran su patente indisponibilidad para ser llamada a testificar nuevamente.**

Al tomar en cuenta esto, y al sopesar que el testimonio anterior de la menor L.M.L.A. cumple satisfactoriamente con el estándar establecido en Crawford, *supra*, y su progenie, es forzoso concluir que en este caso la balanza se inclina a que se declare a la menor L.M.L.A. testigo no disponible y se admita en evidencia su testimonio anterior. **Esto, pues el problema de confrontación queda completamente superado.**

Según el curso de acción mayoritario, la menor L.M.L.A. será sometida de manera innecesaria e injusta a otro procedimiento que le obligará a relatar una vez más su trauma, ya sea ante profesionales de la salud o ante un juez en el Tribunal. Este proceder, no nos quepa duda,

desencadenará en la activación de aquellos estresores que llevaron a su hospitalización en primer lugar y que impidieron que prestara su testimonio el día del juicio. Reitero, está en nuestras manos evitar que esto ocurra.

De otra forma, estaríamos ignorando el texto claro de la regla en cuestión, lo reseñado por los tratadistas y la jurisprudencia persuasiva a estos efectos. No solamente eso, estaríamos fallándole a una niña que ha sido más que valiente en un proceso que por su naturaleza resulta angustiante y humillante. Después de todo, somos nosotros los llamados a evitar que una persona que ha tomado el paso de testificar sobre un crimen de esta índole resulte nuevamente una víctima, pero en esta ocasión, como resultado de un proceso criminal interminable.

## IV

No puedo comulgar con la decisión mayoritaria cuando su resultado se traducirá indudablemente en alargar innecesariamente el proceso criminal en curso, y en exponer fatalmente a la menor L.M.L.A. a un procedimiento que no alberga las salvaguardas necesarias para proteger su salud mental e integridad emocional. Aun cuando la menor se encontraba testificando a través de un circuito cerrado, fue el procedimiento judicial como estresor de su trauma, el que desencadenó una serie de eventos psicogénicos y de disociación de la realidad que debieron ser suficientes para demostrar que no está disponible para propósitos de lo que recoge la Regla 806(A)(4), *supra*.

Contrario a lo que pretendió la mayoría de este Tribunal, lo resuelto no provee un remedio práctico ni justiciero —al menos no para L.M.L.A.—, mucho menos salvaguarda su dignidad como víctima de un delito de índole sexual a manos de su propio padre. Tras el curso de acción mayoritario, disiento.


                                    Maite D. Oronoz Rodríguez
                                        Jueza Presidenta