ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PUEBLO DE PUERTO RICO<br><br>Apelada<br><br>v.<br><br>JOSÉ MANUEL DÍAZ SERRANO<br><br><br>FRACISCO JESÚS SANTIAGO ROSARIO<br><br>Apelantes | KLAN202400263 | *APELACIÓN*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Criminal Núm.:<br>G BD2022G0038<br>G FJ2022G0009-10<br>G LA2022G0045-48<br><br>Criminal Núm.:<br>G BD2022G0039<br>G FJ2022G0011-12<br>G LA2022G0049-51<br><br>Por:<br>Art. 190.D CP Grave<br>Art. 283 CP (2cs)<br>Art. 6.05 Ley 168 (2cs)<br>Art. 6.14.B Ley 168 |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

**Rivera Pérez, Jueza Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 26 de septiembre de 2024.

Comparecen ante nos el Sr. Francisco J. Santiago Rosario (en adelante, Sr. Santiago Rosario) y el Sr. José M. Díaz Serrano (en adelante, Sr. Díaz Serrano) mediante un recurso de *Apelación Criminal* y nos solicitan la revisión de las sentencias dictadas en su contra por el Tribunal de Primera Instancia, Sala Superior de Guayama (en adelante, TPI).[1] Mediante las referidas sentencias, un Jurado encontró a los apelantes culpables de violación a los Artículos 177, 190 y 283 del Código Penal, 33 LPRA secs. 5243, 5260 y 5376, y los Artículos 6.05 y 6.14 (b) de la Ley Núm. 168-2020, *infra.*

---

[1] La *Sentencia* contra el Sr. Díaz Serrano fue dictada el 16 de febrero de 2024, enmendada el 21 de febrero de 2024, y notificada el 26 de febrero de 2024. La *Sentencia* contra el Sr. Santiago Rosario fue dictada el 16 de febrero de 2024, enmendada el 20 de marzo de 2024, y notificada el 25 de marzo de 2024.

Por los fundamentos que expondremos, se confirman las sentencias apeladas.

**I**

Por hechos ocurridos el 25 de julio de 2022 en Valles de Guayama en el Municipio de Guayama, el Ministerio Público presentó las correspondientes denuncias y acusaciones en contra del Sr. Santiago Rosario y del Sr. Díaz Serrano por violación a los Artículos 177 (amenazas), 190 (d) (robo agravado) y 283 (amenaza o intimidación a testigos) del Código Penal, 33 LPRA secs. 5243, 5260 y 5376, y a los Artículos 6.05 (portación, transportación o uso de armas de fuego sin licencia) y 6.14 (b) (disparar o apuntar armas de fuego) de la Ley Núm. 168-2020, *infra*. En síntesis, al Sr. Santiago Rosario y al Sr. Díaz Serrano se les imputó haberse apropiado ilegalmente de un teléfono celular IPhone 12 perteneciente al Sr. Walter O. Roche Acevedo sustrayéndolo de su persona en su inmediata presencia y contra su voluntad por medio de violencia o intimidación el 25 de julio de 2022 en su residencia en Valles de Guayama. Además, se les imputó haber amenazado con causarles daños físicos al Sr. Walter O. Roche Acevedo y al Sr. Giancarlo Oyola Olmo, quienes por su conocimiento de los hechos podían ser llamados a prestar testimonio; y haber portado y transportado armas de fuegos sin tener una licencia de armas vigente, haberlas utilizado para cometer los referidos delitos de robo agravado y amenaza, y haberlas apuntado hacia el Sr. Walter O. Roche Acevedo y el Sr. Giancarlo Oyola Olmo.

Habiéndose determinado causa probable en las etapas anteriores a juicio, se le dio inicio al juicio en su fondo durante los meses de octubre y diciembre de 2023 ante un panel de jurados. El Ministerio Público presentó como prueba testifical el testimonio de los testigos siguientes: Agt. Carlos L. Alvarado Torres de la Unidad Técnica de Grabaciones de Ponce de la Policía de Puerto Rico; Sr.

Giancarlo Oyola Olmo y Sr. Walter O. Roche Acevedo, víctimas de los delitos; Agt. Ángel Gabriel Caraballo de la Oficina de Registro de Armas de Guayama de la Policía de Puerto Rico; y Agt. Roberto Ayala Vega de la División de Robos del Cuerpo de Investigaciones Criminales de Guayama.

En lo pertinente al único señalamiento de error discutido en el alegato de la parte aquí apelante, durante el interrogatorio del Agt. Ángel Gabriel Caraballo, el Ministerio Público solicitó que se admitieran en evidencia dos (2) certificaciones del Sistema Real de la Policía de Puerto Rico que establecían que los apelantes no tenían licencia de armas de fuego,[2] lo cual fue objetado por la Defensa bajo el fundamento de que dichos documentos no habían sido debidamente autenticados.[3] El TPI declaró No Ha Lugar la objeción de la Defensa, por lo que la prueba en cuestión fue marcada como los *Exhibits* Núm. 9 y 10 del Ministerio Público y admitida en evidencia.[4]

Desfilada y evaluada la totalidad de la prueba, el Jurado rindió un veredicto unánime de culpabilidad para todos los delitos imputados al Sr. Santiago Rosario y al Sr. Díaz Serrano. Así las cosas, el Tribunal de Primera Instancia dictó las sentencias aquí apeladas contra los ahora convictos el Sr. Santiago Rosario y el Sr. Díaz Serrano, condenándolos a satisfacer una pena de ciento dos (102) y ciento dieciséis (116) años de reclusión, respectivamente.[5]

En desacuerdo, el 18 de marzo de 2024, el Sr. Santiago Rosario y el Sr. Díaz Serrano presentaron ante este Tribunal de Apelaciones un recurso de *Apelación criminal*, en el que señalaron que el TPI cometió los errores siguientes:

> Err[ó] [e]l Honorable Tribunal al admitir evidencia que fuera presentada ante el jurado; prueba totalmente inadmisible, afectando los derechos constitucionales de

---

[2] Véase, TPO, págs. 633, 641-642 y 648-649.
[3] Véase, TPO, págs. 633,642-645 y 651.
[4] Véase, TPO, págs. 645 y 648.
[5] Véase, Apéndice de la *Apelación Criminal*. Véase, demás nota al calce núm. 1.

los acusados y en contra de las reglas de evidencia de Puerto Rico.

Err[ó] [e]l Honorable Tribunal al omitir instrucciones específicas al jurado y su procedimiento.

Erró el Honorable Jurado al encontrar culpable a los acusados con prueba o evidencia ilegal, además de prueba contradictoria e insuficiente en derecho. No se probaron los elementos de los delitos más allá de toda duda razonable.

El 1 de julio de 2024, la parte apelante presentó la Transcripción de la Prueba Oral (en adelante, TPO) y, el 15 de julio de 2024, el Procurador General presentó *Moción para Informar Conformidad del Ministerio Público con la Transcripción de la Prueba Oral*.

El 30 de julio de 2024, los apelantes presentaron *Alegato Apelación* y, el 23 de septiembre de 2024, el Procurador General presentó el alegato en oposición.

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A.

De conformidad con lo dispuesto en la Constitución del Estado Libre Asociado de Puerto Rico, "en todos los procesos criminales, el acusado disfrutará del derecho [...] a gozar de la presunción de inocencia". Art. II, Sec. 11, LPRA Tomo 1, ed. 2023, pág. 359. La prueba suficiente para derrotar la presunción de inocencia que cobija a un acusado es aquella que permite hallar a un ciudadano culpable de la comisión de un delito al probar más allá de duda razonable todos los elementos del delito y la conexión del acusado con estos. *Pueblo v. Negrón Ramírez*, 2024 TSPR 41, 213 DPR ___ (2024); *Pueblo v. Toro Martínez*, 200 DPR 834, 855-856 (2018); *Pueblo v. Santiago et al.*, 176 DPR 133, 142 (2009); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).

La determinación de si se probó la culpabilidad del acusado más allá de duda razonable es una que corresponde inicialmente al juzgador de hechos, quien vendrá llamado a evaluar y aquilatar la evidencia presentada ante sí para determinar cuáles hechos han quedado probados o establecidos. Regla 110 de Evidencia, 32 LPRA Ap. VI, R. 110. Véase, *Pueblo v. Toro Martínez,* supra, pág. 858; *Pueblo v. Acevedo Estrada,* supra. En casos criminales con derecho a juicio por Jurado, esta función le corresponde al Jurado, el cual está constitucionalmente encomendado a recibir la prueba, adjudicar los hechos en base a esta y aplicar el derecho según le instruya el tribunal. *Pueblo v. Santana Vélez,* 177 DPR 61, 65-66 (2009); *Pueblo v. Negrón Ayala,* 171 DPR 406, 414 (2007).

Si en virtud de la prueba presentada por el Ministerio Público, el juzgador de hechos estima que se han probado más allá de duda razonable todos los elementos del delito y la conexión de estos con el acusado, la obligación del juzgador es encontrar al acusado culpable del delito imputado. *Pueblo v. Negrón Ramírez,* supra.

El acusado que así fuere convicto tendrá el derecho de apelar su convicción ante un tribunal de superior jerarquía, el cual podrá pasar juicio sobre la determinación de culpabilidad realizada por el Tribunal de Primera Instancia. Regla 193 de Procedimiento Criminal, 34 LPRA Ap. II, R. 193. Esto debido a que se reconoce que la apreciación que hace un juzgador de la evidencia desfilada durante un juicio criminal y la eventual determinación de culpabilidad, son una cuestión mixta de hecho y de derecho que es revisable en apelación por un tribunal de mayor jerarquía. *Pueblo v. Negrón Ramírez,* supra; *Pueblo v. Cabán Torres,* 117 DPR 645, 653 (1986); *Pueblo v. Pagán Díaz,* 111 DPR 608, 621 (1981); *Pueblo v. Serrano Nieves,* 93 DPR 56, 60 (1966).

En nuestro ordenamiento jurídico impera una norma general de deferencia a la apreciación de la prueba y las determinaciones de

hechos que realiza el foro juzgador, y solo reconoce contadas excepciones en las que un tribunal apelativo podrá intervenir con estas y sustituir el criterio del foro primario por el suyo. *Pueblo v. Negrón Ramírez*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Pueblo v. Santiago et al.*, supra, págs. 144-148; *Pueblo v. Irizarry*, 156 DPR 780, 815 (2002). Dicha deferencia emana del hecho de que los juzgadores de instancia se encuentran en una mejor posición para evaluar, aquilatar y adjudicar la prueba presentada ante ellos. *Pueblo v. Negrón Ramírez*, supra; *Pueblo v. Toro Martínez,* supra, págs. 857-858; *Pueblo v. García Colón I*, 182 DPR 129, 165 (2011). Esto cobra mayor vigencia cuando se trata de la prueba testifical desfilada en el juicio. Después de todo, son los juzgadores de hechos los que pueden oír y apreciar la forma de declarar de los testigos, así como su comportamiento. *Pueblo v. Toro Martínez,* supra, pág. 858; *Pueblo v. García Colón I,* supra, pág. 165.

Al respecto, el Tribunal Supremo ha señalado que, si bien la "suficiencia de la prueba" es algo que no debe confundirse con la "apreciación de la prueba" que realiza el juzgador de hechos, lo cierto es que muchas veces el planteamiento sobre insuficiencia de la prueba es uno que se reduce a la credibilidad que se le da a los testigos y a la apreciación que hace el juzgador de instancia sobre la prueba desfilada ante sí. *Pueblo v. Negrón Ramírez*, supra. Esto se debe a que el planteamiento de insuficiencia de prueba suele usarse para atacar, precisamente, la valorización que hace el juzgador de hechos de la prueba que se le presenta. *Íd.* A esos fines, el Tribunal Supremo ha expresado que, cuando los planteamientos sobre insuficiencia de prueba se reducen a uno de credibilidad de testigos (apreciación de la prueba), también seremos deferentes con los foros de instancia. *Íd.*; *Pueblo v. Toro Martínez,* supra, pág. 857.

Por lo tanto, cuando en una apelación una parte cuestiona la validez de un fallo o veredicto en su contra alegando que el juzgador

de hechos erró en su apreciación de la prueba testifical presentada en el juicio, es norma harta conocida que, de ordinario, un tribunal apelativo no intervendrá con dichas determinaciones, a no ser que el foro sentenciador haya incurrido en pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022); *Pueblo v. Toro Martínez*, supra, pág. 858; *Pueblo v. Irizarry*, supra, pág. 789. Se ha definido el concepto de "pasión, prejuicio y parcialidad" como aquellas inclinaciones personales de tal intensidad que llevan a un juzgador a actuar movido por éstas y a adoptar posiciones, preferencias o rechazos con respecto a las partes o sus causas, sin admitir cuestionamientos sobre las mismas y sin importar la prueba que se haya presentado en el juicio. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022); *Pueblo v. Rivera Montalvo*, supra, pág. 354; *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).

Por otro lado, en cuanto al significado de "error manifiesto", se ha expresado que un juzgador incurre en semejante error y en una determinación claramente errónea si, aun habiendo alguna prueba que sostenga las determinaciones de hechos del tribunal, el foro revisor razona que se cometió un error, "como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Dávila Nieves v. Meléndez Marín*, supra, pág. 772. Esto, luego del correspondiente análisis de la totalidad de la evidencia presentada en corte. *Íd.*

Además, se reconoce que un tribunal apelativo podrá revocar la determinación de culpabilidad realizada por un juzgador de hechos si la prueba no concuerda con la realidad fáctica, es increíble o es imposible; y que también podrá intervenir con las determinaciones de hechos y apreciación de la prueba que realice el juzgador de primera instancia si se demuestra que este incurrió en

un abuso de discreción al apreciar y adjudicar la prueba presentada ante sí. *Pueblo v. Negrón Ramírez*, supra.

**B.**

En el presente caso, como ya mencionamos, el Sr. Santiago Rosario y el Sr. Díaz Serrano fueron encontrados culpables de todos los delitos que le fueron imputados, —entiéndase, los delitos de amenaza, robo agravado, amenaza o intimidación de testigos, portación ilegal de un arma y apuntar con un arma—, mediante un veredicto unánime del Jurado.

El delito de robo se encuentra tipificado en el Artículo 189 del Código Penal, 33 LPRA sec. 5259. Este Artículo dispone que incurrirá en la comisión de este delito:

> "[t]oda persona que se apropie ilegalmente de bienes muebles pertenecientes a otra, sustrayéndolos de la persona en su inmediata presencia y contra su voluntad, por medio de violencia o intimidación, o inmediatamente después de cometido el hecho emplee violencia o intimidación sobre una persona para retener la cosa apropiada [...]". *Íd.*

Existen circunstancias que agravan el delito de robo. Estas circunstancias pueden incluir:

> "(a) cuando se vale de un menor que no ha cumplido dieciocho (18) años de edad;
>
> (b) cuando el bien objeto del delito es un vehículo de motor;
>
> (c) cuando en el curso del robo se le inflige daño físico a la víctima;
>
> (d) cuando ocurre en un edificio ocupado donde esté la víctima o en cualquier otro lugar donde esta tenga una expectativa razonable de intimidad;
>
> (e) cuando medie el uso de un arma de fuego en la comisión del delito; o
>
> (f) cuando la víctima o víctimas sean amarradas, amordazadas o se limite su libertad de movimiento durante la comisión del delito." Artículo 190 del Código Penal, 33 LPRA sec. 5260.

Si el delito de robo se comete en cualquiera de las circunstancias antes mencionadas, se considerará robo agravado y

se sancionará con pena de reclusión por un término fijo de veinticinco (25) años. *Íd.*

Por otra parte, el Código Penal tipifica el delito de amenaza en el Artículo 177. 33 LPRA sec. 5243. Según este Artículo, una persona comete este delito menos grave cuando amenaza "a una o varias personas con causar un daño determinado a su persona o su familia, integridad corporal, derechos, honor o patrimonio." *Íd.*

A su vez, el delito de amenaza o intimidación a testigo se encuentra tipificado en el Artículo 283 del Código Penal, 33 LPRA sec. 5376. Este Artículo dispone que incurrirá en la comisión de este delito:

> "[t]oda persona que amenace con causar daño físico a una persona, su familia o daño a su patrimonio, o incurra en conducta que constituya intimidación o amenaza, ya sea física, escrita, verbal, o no-verbal, cuando dicha persona sea testigo o por su conocimiento de los hechos pudiera ser llamado a prestar testimonio en cualquier investigación, procedimiento, vista o asunto judicial, legislativo o asunto administrativo, que hubiese o no comenzado, si este último conlleva sanciones en exceso de cinco mil dólares ($5,000) o suspensión de empleo o sueldo, con el propósito de que no ofrezca su testimonio, lo preste parcialmente o varíe el mismo [...]." *Íd.*

Finalmente, en Puerto Rico, el uso indebido de armas de fuego está regulado por la *"Ley de Armas de Puerto Rico de 2020"*, 25 LPRA sec. 25 LPRA sec. 461 *et seq.* Esta ley establece las normas y restricciones para la posesión, portación y uso de armas de fuego y municiones.

El delito de portación, transportación o uso de armas de fuego sin licencia se encuentra tipificado en el Artículo 6.05 de la Ley Núm. 168-2019, *supra.* El mismo dispone que incurrirán en la comisión de este delito grave:

> "[t]oda persona que porte, transporte o use cualquier arma de fuego, sin tener una licencia de armas vigente, salvo lo dispuesto para los campos de tiro o lugares donde se practica la caza [...].
> [...]
> Se considerará como atenuante cuando el arma esté descargada y la persona no tenga municiones a su

alcance. Se considerará como "agravante" cualquier situación en la que el arma ilegal se utilice en la comisión de cualquier delito o su tentativa." *Íd.*

Un elemento esencial del delito de portación ilegal de un arma de fuego es la ausencia de autorización para la correspondiente portación. *Pueblo v. Negrón Nazario,* 191 DPR 720, 752 (2014). La portación ilegal de un arma de fuego puede demostrarse en el juicio con evidencia de que la persona portó un arma de fuego sin un permiso a tales efectos, en cuyo caso la prueba debe estar dirigida a demostrar la portación de arma y la ausencia de permiso. *Íd.*

A su vez, el delito de disparar o apuntar armas de fuego se encuentra tipificado en el Artículo 6.14 de la Ley Núm. 168-2019, *supra.* El mismo dispone que incurrirán en la comisión de este delito grave:

> "toda persona que, salvo en casos de legítima defensa, propia o de terceros, o de actuaciones en el legítimo desempeño de funciones oficiales o actividades legítimas de deportes:
> (a) voluntariamente dispare cualquier arma de fuego fuera de los lugares autorizados por esta Ley, aunque no le cause daño a persona alguna; o
> (b) intencionalmente apunte hacia alguna persona con un arma de fuego, aunque no le cause daño a persona alguna.
> De mediar circunstancias agravantes, la pena establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año. [...]." *Íd.*

## C.

En un juicio por Jurado, el tribunal debe impartir instrucciones haciendo un resumen de la evidencia y exponiendo todas las cuestiones de derecho necesarias para la información del jurado. Regla 137 de Procedimiento Criminal, 34 LPRA Ap. II., R. 137. Las instrucciones deben ser correctas, claras, precisas y lógicas. *Pueblo v. Colón González,* 209 DPR 967, 987 (2022); *Pueblo v. Ortiz Martínez,* 116 DPR 139 (1984). Al respecto, la Regla 137 de Procedimiento Criminal, *supra,* dispone lo siguiente:

> "Terminados los informes, el tribunal deberá instruir al jurado haciendo un resumen de la evidencia y

exponiendo todas las cuestiones de derecho necesarias para la información del jurado. Por estipulación de las partes, hecha inmediatamente antes de empezar las instrucciones y aprobada por el tribunal, se podrá omitir hacer el resumen de la evidencia. Todas las instrucciones serán verbales a menos que las partes consintieren otra cosa. Cualquiera de las partes podrá presentar al tribunal una petición escrita de que se den determinadas instrucciones, al terminar el desfile de la prueba, o anteriormente si el tribunal razonablemente así lo ordena. Deberá servirse copia de dicha petición a la parte contraria. El tribunal podrá aceptar o rechazar cualquiera o todas dichas peticiones, anotando debidamente su decisión en cada una, e informará a las partes de su decisión antes de que éstas informen al jurado. Ninguna de las partes podrá señalar como error cualquier porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ellas o solicitare instrucciones adicionales antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación, o de su solicitud. Se le proveerá oportunidad para formular éstas fuera de la presencia del jurado. El tribunal procederá entonces a resolver la cuestión, haciendo constar su resolución en el expediente o trasmitiendo cualquier instrucción adicional que estimare pertinente. Al terminar las instrucciones el tribunal nombrará al presidente del jurado y ordenará que el jurado se retire a deliberar. En sus deliberaciones y veredicto el jurado vendrá obligado a aceptar y aplicar la ley según la exponga el tribunal en sus instrucciones."

El Tribunal Supremo ha señalado que la utilización del libro de instrucciones es discrecional. *Pueblo v. Colón González*, supra.[6] Sin embargo, constituye una buena práctica su utilización en aras de disminuir las posibilidades de error en las instrucciones al jurado y de lograr mayor uniformidad en la administración de la justicia criminal. *Íd.*; *Pueblo v. Echevarría Rodríguez I*, 128 DPR 299, 343 (1991). Las instrucciones que son impartidas según el manual están cobijadas por una presunción de corrección. *Íd.*; *Pueblo v. Ortiz González*, 111 DPR 408, 410 (1981). Por lo tanto, quien las impugne deberá demostrar afirmativamente que la instrucción es errónea. "Para determinar la corrección o incorrección de las instrucciones

---

[6] Recientemente se aprobó un nuevo *Libro de Instrucciones al Jurado*, Secretariado de la Conferencia Judicial y Notarial, (actualizado en febrero 2022). Véase, *In re: Aprobación del Libro de Instrucciones al Jurado y otros*, 208 DPR 1042 (2022).

hay que considerarlas en su totalidad y no por frases aisladas. *Íd.*, pág. 988, citando a *Pueblo v. Echevarría Rodríguez*, supra, pág. 344.

En *Pueblo v. Sánchez Molina*, 134 DPR 577, 595 (1993), se estableció que para determinar si un error en las instrucciones al Jurado sobre el efecto de alguna presunción es o no perjudicial, "el tribunal apelativo debe primero considerar qué evidencia el Jurado en verdad consideró al llegar a un veredicto y, segundo, sopesar el valor probatorio de dicha evidencia contra el valor probatorio de la presunción". Véase, *Pueblo v. Colón González*, supra. Para concluir que el error fue no perjudicial, el tribunal apelativo "necesita estar convencido más allá de duda razonable de que, dado lo abrumador del valor probatorio de la evidencia en verdad considerada por el Jurado comparado con el valor probatorio de la presunción, el veredicto hubiera sido el mismo en ausencia de la instrucción errónea". *Pueblo v. Sánchez Molina*, supra.

### D.

La Regla 901 de Evidencia, 32 LPRA Ap. VI, R. 901, establece que "[e]l requisito de autenticación o identificación como una condición previa a la admisibilidad se satisface con la presentación de evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene." De conformidad con este requisito, y sin que se interprete como una limitación, el inciso (B) de la Regla 901 enumera ciertos ejemplos de autenticación o identificación. Entre estos ejemplos, y en lo pertinente, se encuentran los siguientes:

> "(1) Testimonio por testigo con conocimiento. — Testimonio de que una cosa es lo que se alega.
>
> [...]
>
> (11) Cadena de custodia. —La evidencia demostrativa real puede ser autenticada mediante su cadena de custodia.
>
> (12) Proceso o sistema. —Evidencia que describa el proceso o sistema utilizado para obtener un resultado y

que demuestre que el proceso o sistema produce resultados certeros.

(13) Récord electrónico. —Un récord electrónico podrá autenticarse mediante evidencia de la integridad del sistema en el cual o por el cual los datos fueron grabados o almacenados. La integridad del sistema se demuestra a través de evidencia que sustente la determinación que en todo momento pertinente el sistema de computadoras o dispositivo similar estaba operando correctamente o en caso contrario, el hecho de que su no operación correcta no afectó la integridad del récord electrónico." 32 LPRA Ap. VI, R. 901 (B) (1), (11), (12) y (13).

El profesor Ernesto L. Chiesa indica que la Regla 901 (A) trata sobre pertinencia condicionada a una cuestión de hechos que le corresponderá dirimir, en última instancia, al jurado. E. L. Chiesa, *Reglas de Evidencia de Puerto Rico 2009*, San Juan, Publicaciones JTS, pág. 292. Por eso el juez de instancia lleva a cabo una vista y "recibe evidencia del proponente para establecer la autenticidad de la evidencia y el juez debe admitirla y pasarla al jurado con tan solo creer que un jurado razonable podría estimar que la cosa es lo que el proponente sostiene que es, aunque el juez personalmente crea otra cosa." *Íd.* De ahí que el Tribunal tiene la facultad de excluir la evidencia cuando lo que presente el proponente para autenticarla no logra satisfacer esa mínima exigencia, esto es, que la prueba "es tan pobre que el juez estima que ningún jurado razonable creería que la cosa es lo que el proponente alega que es." *Íd.*

**E.**

En cuanto a la admisión o exclusión errónea de evidencia, la Regla 104(a) de Evidencia, 32 LPRA Ap. VI, R. 104(a), en lo pertinente, dispone que "[l]a parte perjudicada por la admisión errónea de evidencia debe presentar una objeción oportuna, específica y correcta [...]." *Pueblo v. Santiago Irizarry*, 198 DPR 35, 44 (2017). En el caso de exclusión errónea de prueba, la Regla dispone, además, que:

"[L]a parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida

y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. No será necesario invocar tal fundamento específico ni hacer la oferta de prueba cuando resultan evidentes del contexto del ofrecimiento.

El tribunal permitirá la oferta de prueba y determinará si debe hacerse mediante un resumen de la evidencia ofrecida o el interrogatorio correspondiente. El tribunal podrá añadir cualquier manifestación que demuestre el carácter de la evidencia, la forma en que fue ofrecida, la objeción a su admisión y la resolución sobre la exclusión." Regla 104(b) de Evidencia, *supra.*

De esta forma, la Regla 104 de Evidencia, *supra*, permite que la parte perjudicada pueda apelar, en su momento, la determinación del foro de instancia. Ahora bien, para que el foro apelativo pueda dejar sin efecto dicha determinación, la parte perjudicada deberá cumplir con lo dispuesto en la Regla 105 de Evidencia, 32 LPRA Ap. VI, R. 105. Esta Regla dispone que, como regla general, no se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que:

"(1) La parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104, y

(2) el tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita." Regla 105(a) de Evidencia, *supra.*

Con relación a este último requisito, la doctrina de error no perjudicial (*harmless error*) establece que los tribunales apelativos no revocarán una sentencia por admisión o exclusión errónea de evidencia, a menos que el error haya sido "un factor decisivo o sustancial en la sentencia emitida". *Íd.*; *Pueblo v. Santiago Irizarry*, supra, pág. 45. Véase, además, *Pueblo v. Santos Santos*, 185 DPR 709, 728 (2012). Por lo tanto, si el error se considera no perjudicial porque la exclusión o admisión de la evidencia no hubiese producido un resultado distinto, se deberá confirmar el dictamen a

pesar del error. *Pueblo v. Santiago Irizarry*, supra, pág. 45.

**F.**

La Regla 801 de Evidencia, 32 LPRA Ap. VI, R. 801(c), establece que es prueba de referencia toda declaración "que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Precisamente por los peligros que entraña la admisión de una evidencia proveniente de un declarante a quien la parte contra quien se ofrece la declaración no ha confrontado ni contrainterrogado, la Regla 804 de Evidencia, *supra*, reconoce una prohibición general a la prueba de referencia, salvo unas exclusiones o excepciones particularmente definidas.

La Regla 805 de Evidencia, 32 LPRA Ap. VI, R. 805, enumera las excepciones a la norma general de exclusión de prueba de referencia. Entre ellas, se encuentran declaraciones contemporáneas a la percepción; declaraciones espontáneas por excitación; condición mental, física o emocional; declaraciones para fines de diagnóstico o tratamiento médico; escrito de pasada memoria; expedientes de actividades que se realizan con regularidad; ausencia de entradas en los récords; expedientes e informes públicos; expediente de estadística vital; ausencia de expediente público; expedientes de organizaciones religiosas; certificados de matrimonio, bautismo y otros similares; expedientes de familia; expedientes oficiales sobre propiedad; declaraciones en documentos que afecten intereses en propiedad; declaraciones en documentos antiguos; listas comerciales y otras similares; tratados; reputación sobre historial personal o familiar; reputación sobre colindancias o historial general; reputación sobre carácter y sentencia por condena previa. *Íd.*

Sin abundar más allá de lo necesario, sabemos que la metodología adoptada por el Tribunal Supremo Federal en *Crawford*

*v. Washington*, 541 US 36 (2004), y reiterada en nuestra jurisdicción en *Pueblo v. Guerrido López*, 179 DPR 950 (2010), reconoce que la admisión de declaraciones constitutivas de prueba de referencia queda reñida con el derecho constitucional a la confrontación en los casos criminales cuando lo declarado constituye una expresión testimonial que contiene dentro de sí una declaración emitida por alguien que no está presente para ser confrontado y contrainterrogado por el acusado o su defensa. *Pueblo v. Lugo López*, 2024 TSPR 83, 214 DPR ___ (2024). En lo pertinente, la normativa de *Crawford* y su progenie exigen determinar, primeramente, si estamos ante una declaración testimonial. La naturaleza testimonial de una declaración proviene de si su propósito primario "era crear un sustituto extrajudicial para el testimonio que se ofrecería en corte". Si la declaración fuera testimonial, procede entonces examinar (1) si el testigo no está disponible y (2) si hubo ocasión previa para someterlo a un contrainterrogatorio. *Crawford v. Washington*, supra, pág. 68; *Pueblo v. Guerrido López*, supra, pág. 967. Satisfechos estos pasos, procedería la admisión de prueba de referencia contra un acusado sin que esto implique una violación constitucional y sujeto, únicamente, al cumplimiento con los requisitos que emanan del ordenamiento probatorio estatal.

**III**

En el primer error de su recurso de *Apelación Criminal*, el Sr. Santiago Rosario y el Sr. Díaz Serrano señalan que erró el TPI "al admitir evidencia que fuera presentada ante el jurado; prueba totalmente inadmisible, afectando los derechos constitucionales de los acusados y en contra de las reglas de evidencia de Puerto Rico." Al respecto, alegan que el TPI erró al admitir en evidencia dos (2) documentos del Sistema Real de la Policía de Puerto Rico en los que se certificaba que los apelantes no tenían una licencia de arma de fuego válida (*Exhibits* Núm. 9 y 10 del Ministerio Público). A juicio

de los apelantes, la prueba presentada por el Ministerio Público para autenticar estos documentos fue insuficiente para evidenciar la integridad del Sistema Real Policía de Puerto Rico en el momento en que se obtuvieron las certificaciones de dicho sistema, por lo que no se cumplió con la Regla 901 (13) de Evidencia, 32 LPRA Ap. VI, R. 901 (13).

Luego de examinar la transcripción de la prueba testifical, concluimos que las certificaciones en cuestión fueron debidamente autenticadas por el Ministerio Público. Previo a solicitar la admisión en evidencia de dichas certificaciones, el Ministerio Público presentó como testigo al Agt. Ángel Gabriel Caraballo de la Oficina de Registro de Armas de Guayama de la Policía de Puerto Rico, quien declaró sobre el Sistema Real de la Policía.[7] Específicamente, explicó que este sistema era utilizado por oficiales de la policía para, entre otras cosas, verificar si una persona tenía una licencia de armas de fuego válida.[8] Además, mencionó que el sistema era altamente confiable,[9] que solo los oficiales autorizados tenían acceso al mismo[10] y que la Oficina de Registro de Armas de Guayama lo utilizaba diariamente.[11] También detalló el procedimiento para solicitar y obtener datos del sistema.[12] Finalmente, a preguntas del Ministerio Público, el testigo declaró que el Sistema Real de la Policía estaba funcionando bien el 1 de septiembre de 2022,[13] fecha en que personalmente solicitó y obtuvo de dicho sistema las certificaciones en cuestión del Sr. Santiago Rosario y del Sr. Díaz Serrano.

Por lo tanto, determinamos que el error antes señalado no se cometió.

---

[7] Véase, TPO, págs. 599-653.
[8] Véase, TPO, págs. 612 y 615-616.
[9] Véase, TPO, pág. 613.
[10] Véase, TPO, pág. 614.
[11] Véase, TPO, pág. 611 y 613.
[12] Véase, TPO, págs. 612-616 y 623-651.
[13] Véase, TPO, págs. 614-615 y 626-627.

Por otra parte, en el segundo y tercer error del recurso de *Apelación Criminal*, la parte apelante señala que erró el TPI "al omitir instrucciones específicas al jurado y su procedimiento"; y que erró el Jurado "al encontrar culpable a los acusados con prueba o evidencia ilegal, además de prueba contradictoria e insuficiente en derecho", pues "[n]o se probaron los elementos de los delitos más allá de toda duda razonable."

Estos errores no fueron fundamentados ni discutidos por la parte apelante en su alegato, por lo que determinamos que no existe motivo para revisar, modificar o de alguna manera cambiar la decisión del Tribunal de Primera Instancia. Véase, *Pueblo v. Rosario Paredes*, 209 DPR 155, 187-190 (2022). Véase, además, Regla 28(C)(1)(e) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 28(C)(1)(e). Además, evaluada la transcripción de la prueba oral, entendemos que las instrucciones impartidas al Jurado cumplieron sustancialmente con su propósito.

De igual manera, entendemos que no están presentes ningunas de las excepciones para intervenir con la decisión del foro apelado con respecto a que el Ministerio Público logró probar más allá de duda razonable todos los elementos de los delitos y su conexión con los acusados.

Según expusimos, como norma general un tribunal apelativo no intervendrá con las determinaciones de hechos y la apreciación de la prueba que haga el Tribunal de Primera Instancia a no ser que este haya incurrido en prejuicio, parcialidad, pasión o error manifiesto.

En este caso, el Ministerio Público demostró que, durante la madrugada del 25 de julio de 2022, los apelantes entraron, en concierto y común acuerdo, en el apartamento donde residían el Sr. Walter Roche Acevedo y su familia en el Residencial Valles de Guayama. En dicho lugar se encontraban los señores Walter Roche

Acevedo y Giancarlo Oyola Olmo. A través del uso de violencia e intimidación, los apelantes se apropiaron de un teléfono celular IPhone 12, propiedad del Sr. Walter Roche Acevedo, quien resultó herido durante el incidente. El Ministerio Público también demostró que los apelantes estaban armados, sin contar con licencia para ello, y amenazaron de muerte a los jóvenes advirtiéndoles que no querían *"choteaera"* o serían asesinados. Además, quedó comprobado que el Sr. Díaz Serrano apuntó con su pistola a ambas víctimas, mientras el Sr. Santiago Rosario dirigió su arma al Sr. Giancarlo Oyola Olmo.[14]

Estos hechos fueron probados mediante un extenso desfile de pruebas, que incluyó testimonios, documentación, fotos y vídeos. A nuestro juicio, el Ministerio Público logró establecer en este caso los elementos constitutivos de los delitos, así como la conexión entre estos y los apelantes, probando su culpabilidad más allá de duda razonable.

Finalmente, a pesar de no haberlo levantado formalmente como un señalamiento de error en su escrito de apelación, la parte apelante discute en su alegato que, durante el interrogatorio de uno de los testigos surgió una controversia relacionada a unas expresiones hechas por el Tribunal. Aunque la parte apelante no identifica por su nombre a este testigo, entendemos que se refiere al Sr. Walter O. Roche Acevedo. Al respecto, señala lo siguiente:

> "De no haberse ordenado bajarle la voz al testigo principal o testigo principal o estrella esto sin duda causo un grave perjuicio a la defensa, afectó totalmente ese contrainterrogatorio. Con nuestra vehemente objeción y argumentación pues obviamente el tribunal con el *voir-dire* que sostenemos nunca debió haberse celebrado porque la defensa en nada faltó a lo que es el trámite legal normal de un abogado-defensor en su contrainterrogatorio.
>
> El juez no solamente le dio un respiro o calma en la etapa más crucial del juicio, sino que accedió a su

---

[14] Véase, TPO del 20 de octubre de 2023, págs. 58, 97-101, 127-131; TPO del 16 de octubre de 2023, págs. 103-140.

pedido: "que el abogado me hable bajito". El propio testigo expresó que se sentía bien y que no tenía ningún problema en continuar contestando. A todo esto, el jurado escuchó completamente el inicio de las argumentaciones, pues no solo sus sillas están más cercas a estos, que en adición luego de que lo califican de víctima, inmediatamente ordenaban a este abogado a bajarle la voz."[15]

De igual forma, la parte apelante discute además en su recurso que el TPI incorrectamente determinó que lo expresado por la esposa de dicho testigo y la del Sr. Díaz Serrano en medio de una discusión frente a un hospital era prueba de referencia inadmisible en evidencia, por lo que no permitió una línea de preguntas de la Defensa durante el contrainterrogatorio del Sr. Walter O. Roche Acevedo dirigidas a que este declarara sobre lo que las escuchó decir. Al respecto, la parte apelante alegó lo siguiente:

"En la determinación fundamental y error craso sobre el testigo Walter Omar, el tribunal determina que es prueba de referencia y no permitió contrainterrogar en esa área completa. Nos referimos a todos los hechos presenciados por este en el hospital, donde escuchó a su esposa y a la esposa de José Manuel Diaz Serrano (acusado) discutir. Declaró el testigo que estuvo allí frente a ellas, cerca, que las escucho; preguntamos de que discutían y ahí entra la objeción: "prueba de referencia". Hubo varios intentos de entrar en esos fundamentales. Estos son los hechos que originan la controversia. Debemos plantear que son contemporáneos a la percepción. De hecho, la fiscal desfiló prueba de todo lo ocurrido desde adentro y fuera del Hospital Menonita con videos que ilustraban la agresión o pelea de las esposas. Además, que el propio testigo declaró que él y el acusado habían tenido problemas anteriores y habían peleado.

[…]

Por tal razón antes de formular la pregunta establecimos las bases y ubicamos al testigo exactamente en el lugar de los hechos y frente a las esposas que discutían. Nos es forzoso señalar que desde dicha discusión y/o incidente de agresión, surge la controversia. El jurado no pudo escuchar que fue todo lo que pasó allí.

En el presente caso el tribunal no permitió que tan siquiera se manifestara expresión alguna. A pesar de que parte fundamental en controversia del caso era que el testigo (Walter Omar) y su esposa querían llevarse los niños fuera de Puerto Rico y el testigo señalaba que fue

---

[15] Véase, pág. 4 del *Alegato Apelación*.

porque su esposa había metido al acusado, José Manuel en un caso de pensión alimentaria. La impugnación iba dirigida al tema de llevarse o secuestrar los: niños fuera de Puerto Rico versus la versión del testigo que la discusión fue porque le abrieron un caso de pensión alimenticia. Así las cosas, el jurado se quedó con una única versión se metieron a la casa con pistolas por un caso de pensión."[16]

En primer lugar, al evaluar el valor probatorio de la evidencia física y testimonial que el Jurado recibió en este caso, estamos convencidos de que el veredicto hubiera sido el mismo en ausencia de la expresión del Juez dirigida al abogado de Defensa. Por otra parte, según expusimos, la Regla 105 de Evidencia, *supra*, dispone que no se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello la sentencia o decisión tomada a menos que el tribunal que considere el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita. Si el error se considera no perjudicial porque la exclusión de la evidencia no hubiese producido un resultado distinto, se deberá confirmar el dictamen a pesar del error. *Pueblo v. Santiago Irizarry*, supra, pág. 45; *Izagas Santos v. Family Drug Center*, 182 DPR 463,483-84 (2011).

Al analizar el caso bajo el estándar de error no perjudicial, es forzoso concluir que la admisión de la prueba en cuestión no hubiese producido un resultado distinto. Véase, Regla 105(a) de Evidencia, *supra*. Por lo tanto, resolvemos que el error no fue perjudicial y por ello, no exige la revocación del fallo.

**IV**

Por los fundamentos expuestos, se confirman las sentencias apeladas.

---

[16] Véase, págs. 5-6 del *Alegato Apelación.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones